**KENTUCKY CENTRAL LIFE INSURANCE COMPANY, Appellant,**

v.

**Marvin D. FANNIN, Appellee.**

**No. 8952.**

Court of Civil Appeals of Texas, Amarillo.

Nov. 30, 1978.

Rehearing Denied Dec. 27, 1978.

Brock, Waters & Pigg, Harold H. Pigg, Lubbock, for appellant.

McClendon & Richards, Tom M. Richards, Lubbock, for appellee.

REYNOLDS, Justice.

Kentucky Central Life Insurance Company seeks to reverse a judgment imposing liability for the accidental death benefits provided by insurance policies it issued. None of the assertions of error is a valid premise for overturning the jury's verdict of death by accidental means. Affirmed.

Kentucky Central Life Insurance Company insured the life of Sylvia G. Fannin, whose husband, Marvin D. Fannin, was the named beneficiary. Each of three life insurance policies provided a death benefit of $1,000 with an additional $1,000 in the event that death resulted directly, and independently of all other causes, from accidental bodily injury. A fourth automobile accidental death policy provided a $5,000 benefit for loss of life resulting from bodily injury caused solely by an automobile accident.

Three years later, Sylvia G. Fannin died after the automobile she was driving was wrecked. The insurance company paid the $3,000 death benefits provided in the life insurance policies, but denied the claims for accidental death benefits.

Marvin D. Fannin instituted this action to recover the unpaid death benefits specified in the four policies. The insurance company interposed the policy exclusions. The life insurance policies excluded accidental death benefits (1) if death or injury resulting in death results from intentionally self-inflicted injury or self-inflicted injury while the insured is insane, or inten-

tional self-destruction within two years from the date of policy issue whether sane or insane; or (2) if death or injuries resulting in death is caused or contributed to by disease, or mental or bodily infirmity. The automobile accidental death policy excluded death benefits (1) unless the loss of life results from bodily injury directly and independently of all other causes, and (2) if the loss is caused or contributed to by suicide or self-destruction. The pleading of these exclusions in avoidance of liability placed on Marvin D. Fannin the burden of proof to negate the exclusions before he could recover. *Sherman v. Provident American Insurance Company*, 421 S.W.2d 652, 654 (Tex. 1967).

After hearing the evidence and responding to the three special issues submitted, the jury found that the death of Sylvia G. Fannin: (1) resulted, directly and independently of all other causes, from bodily injury caused by the automobile collision; (2) was the result of an accident; and (3) was not the result of suicide, sane or insane. Accepting the verdict, the trial court rendered judgment decreeing that Marvin D. Fannin recover of and from Kentucky Central Life Insurance Company the sum of $8,000 and the statutory penalty of $960, with interest thereon at the rate of nine percent per annum, plus $2,000 as reasonable attorney's fees and all costs of suit.

The insurance company has appealed from the judgment, assigning nine points of error. Because the points are focused on the evidential development of the cause, a summary of the evidence, which is not disputed in any material aspect, properly positions the assertions of error.

The Fannins resided in Denver City, Texas. Mr. Fannin is employed as a fishing tool supervisor in the oil fields; Mrs. Fannin was employed as a secretary for an electrical business. Mr. Fannin listed Mrs. Fannin's past illnesses—colds, flu and pneumonia; her past hospitalizations—for child births and a hysterectomy nine years ago; her current condition—being overweight and a little high blood pressure; and characterized her health as "pretty good." Although Mrs. Fannin sometimes "would . . get low as any of us will . . . it didn't last too long," and she neither took medicine not prescribed by a doctor nor used alcohol regularly. They were not having any problems with their marriage and, during the twenty-one year union, Mrs. Fannin never indicated any propensity toward self-destruction or predisposition to kill one of the children.

Mrs. Fannin had talked with her sister-in-law on the day of and prior to her death. They did not talk of death, but previously they had discussed death. "[W]e," reported the sister-in-law, "always said if we were going to commit suicide we would get a gun and go right here because too many people don't die in car wrecks. We have talked about how people have been paralyzed and she [Sylvia G. Fannin] was very much afraid of pain." It was the sister-in-law's opinion that Mrs. Fannin loved her family very much, seemed all right and was not insane.

Mrs. Fannin's husband, daughter and sister-in-law bore witness to her driving habits. To their knowledge, she was a careful driver, had never driven over 80 miles an hour, never failed to stop for a stop sign, and did not receive traffic tickets.

On the day of her death, Mrs. Fannin asked her son, his friend and her unmarried daughter, Linda, to go with her to the grocery store to purchase some bread. The son and his friend declined, but Linda accepted the invitation. Mrs. Fannin, accompanied by Linda, drove her automobile north on Main Street and stopped at a station for gasoline. Rather than proceeding northward toward the grocery store, Mrs. Fannin turned south on Main Street and drove toward the country.

While proceeding south on Main Street, Mrs. Fannin talked with Linda about the rumor, which Mrs. Fannin had discussed with her husband and sister-in-law, that Linda was pregnant by a married man. Linda satisfied her mother that she was not pregnant; her mother was relieved, pleased and was not acting strangely.

Continuing south on Main Street, Mrs. Fannin passed over a dirt road to a "Y" in the road. She turned east on a straight, paved county road which intersected with State Highway 214 at a distance of two or three miles. So far as her husband, daughter and sister-in-law had knowledge, Mrs. Fannin had not been on this county road previously.

Mrs. Fannin and Linda began telling and laughing at jokes. After travelling no more than a mile, Mrs. Fannin gradually accelerated the speed of the automobile. At one point, Linda saw the speedometer indicate a speed of 110 miles an hour. Linda asked her mother to slow down at least once and Mrs. Fannin did so, but she gradually increased the speed and, during the majority of the distance travelled, the automobile was going in excess of 100 miles an hour. Mrs. Fannin laughed continuously, and her laugh was deeper and longer than Linda had ever heard. Linda attributed her mother's laughter, which was not hysterical, and the acceleration to a joke Linda told. Linda was calm, not scared, and Mrs. Fannin was driving competently as they approached the intersection with State Highway 214. Linda saw no other cars in the vicinity.

A stop sign, located some fifteen feet from the intersection, controls traffic approaching on the county road, and there were no obstructions to prevent its being visible. The sun was up, the day was clear and there was no moisture on the road. There is a dip in the county road just before the intersection is reached.

Linda recalled that Mrs. Fannin's automobile "kind of ran into the road," became airborne and landed on the other side of the intersection. If the car had not hit the bump, "We," Linda said, "would just have gone straight." As reconstructed by the investigating highway patrolman, the automobile dug into the county road at the dip, went airborne for 158 feet, came down and dug into the pavement, skidded sideways off the roadway for 121 feet, became airborne again and rolled 132 feet and rolled a third time for 108 feet—a total distance of 519 feet.

Linda, injured and dazed, remembered standing by the car in a field and seeing her mother, who had been thrown out of the automobile. The investigating officer found a wrecked automobile to the east of the state highway, and he saw the body of Mrs. Fannin. It was apparent to him from looking at the body what had caused death. "It [the body] was completely demolished," he said, agreeing that it was "[j]ust broken up all over." Mr. Fannin went to the scene, saw his wife's body and was told that she was dead.

The patrolman test-drove the dip. At a speed in excess of thirty-five miles an hour, his car ran into the road at the dip. Based on his experience and investigation, he had no reason to disbelieve the speed Linda reported and, in his opinion, a speed of 100 miles an hour would be an unsafe speed on that road. Both the officer and Mrs. Fannin's sister-in-law concurred that they had driven faster than 100 miles per hour and were not, by doing so, trying to kill themselves; yet, the sister-in-law would have been alarmed, and Mr. Fannin would have some fear for his safety, in approaching the particular intersection at a speed in excess of 100 miles an hour, under which circumstances each agreed it would be reasonable to assume a person likely would be injured. Additionally, Mr. Fannin thought it dangerous to operate an automobile at speeds of 80 to 100 miles per hour, and that at a speed of 90 miles an hour the probability of an accident was greater than at 50 miles an hour.

■ This evidential development prompts the insurance company to insist in nine points of error that Marvin D. Fannin failed in his burden to establish an adequate basis in the evidence for either the submission of the three special issues or the findings the jury made thereon. It suffices to state generally, without observing the points seriatim to record the procedural predicates, that the insurance company asserts there is no evidence to warrant the submission of, and there is factually insufficient evidence to support the jury findings made on, each of the three special issues.

In this connection, an assertion of no evidence has validity only if there is an absence of any evidence of probative force, either direct or circumstantial, to raise an issue submitted, *Stevens v. Karr*, 119 Tex. 479, 33 S.W.2d 725, 728–29 (1930), and no valid presumption operates on the issue. *See Farley v. M M Cattle Company*, 529 S.W.2d 751, 756 (Tex.1975), for the principle that a true presumption invokes a rule of law which compels the jury to reach a conclusion in the absence of evidence to the contrary. Conversely, the issue must be submitted to the jury when it is raised by any evidence of a probative nature, *Air Conditioning, Inc. v. Harrison-Wilson-Pearson*, 151 Tex. 635, 253 S.W.2d 422, 425 (1952), or by an operative presumption. *Republic Nat. Life Ins. Co. v. Heyward*, 536 S.W.2d 549, 558–59 (Tex.1976).

An assertion of factual insufficiency of the evidence to support a particular jury finding has validity only if, when all of the evidence is considered and weighed, the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). In considering and weighing the evidence, due deference must be given to the jury's prerogative to judge the credibility of the witnesses and the weight to be given their testimony in resolving the conflicts and inconsistencies in the testimony and arriving at the findings it concludes are the most reasonable under the evidence. To this end, the jury is privileged to believe all or part or none of the testimony of any one witness, and to draw reasonable inferences from the facts it found were proved. *Kulms v. Jenkins*, 557 S.W.2d 149, 153 (Tex. Civ.App.—Amarillo 1977, writ ref'd n. r. e.).

The insurance company first asserts the lack of the required evidential showing that the death of Sylvia G. Fannin was the result of an accident. The crux of the assertion is that she was intentionally and voluntarily operating her automobile on a county road at a speed in excess of 100 miles per hour approaching an intersection with a state highway; therefore, it is inconceivable that she could so operate her automobile and not reasonably anticipate that she could receive injuries which would lead to her death. This leads the insurance company to a conclusion that, definitionally, because her acts did not produce something unforeseen, unexpected and unusual, her death was not accidental.

The principle upon which the conclusion rests has been sundrily expressed. Injuries which result in death are "accidental" within the meaning of the policies here, according to the latest expression of our Supreme Court found in *Republic Nat. Life Ins. Co. v. Heyward, supra*, at 557,

. . . if, from the viewpoint of the insured, the injuries are not the natural and probable consequence of the action or occurrence which produced the injury; or in other words, if the injury could not reasonably be anticipated by insured, or would not ordinarily follow from the action or occurrence which caused the injury.

Consistent with this expression, it is, despite the insurance company's argument to the contrary, immaterial what the witnesses, speaking after the *fait accompli*, could reasonably anticipate would be the probable consequence of Mrs. Fannin's operation of her automobile in the manner described; the controlling viewpoint is that of Mrs. Fannin at the time of her action. Thus, the propriety of the inquiry whether, and the finding that, the death of Mrs. Fannin was the result of an accident depend upon, respectively, the legal and factual sufficiency of the evidence to raise and to show that, from Mrs. Fannin's viewpoint, her conduct was not such as to cause her to reasonably believe that it would result in injuries producing death.

As mentioned, the insurance company emphasizes that Mrs. Fannin's uncharacteristic rate of speed and failure to stop at the intersection stop sign establishes that she reasonably anticipated she could receive injuries which would lead to her death. The assertion disregards two present factors. First, there is a presumption, based upon the recognized instinct of self-preser-

vation, that Mrs. Fannin did not voluntarily bring the danger upon herself. *American Nat. Ins. Co. v. Fox*, 184 S.W.2d 937, 943 (Tex.Civ.App.—Fort Worth 1944, writ ref'd w. o. m.). Second, there is nothing in the act of driving at an excessive rate of speed and failing to stop at a stop sign, though both be violations of the law, which *per se* is calculated to produce bodily injury or death to the driver. Under some circumstances, either excessive speed or a failure to stop may result in injury or death, but it cannot be logically said that death is the natural consequence of either act. Indeed, the testimony of the patrolman and the sister-in-law is to the effect that neither injury nor death is the natural consequence of driving a motor vehicle at speeds in excess of 100 miles an hour.

Apart from that, there is testimony that Mrs. Fannin was pleased and relieved that her unmarried daughter was not pregnant and that a joke brought about her hilarity and the accelerated speed. Although the testimony is that Mrs. Fannin previously had not travelled the county road, the road was straight and paved and the intersection, though controlled, was free of traffic. According to Linda, Mrs. Fannin was driving competently and, except for encountering the dip in the county road, the automobile would have gone through the intersection. However, the dip was encountered, the automobile was wrecked and Mrs. Fannin died. This is some evidence of probative force for the submission of the special issue.

Given this and the related testimony, the jury could believe that Mrs. Fannin operated her automobile as she did in a carefree state of exhileration and reasonably infer that, in her view, she did not intend to cause any injury. The jury was entitled to believe that Mrs. Fannin had not previously travelled the road and to also reasonably infer that, although Mrs. Fannin may have been voluntarily exposing herself to some danger in driving at a high rate of speed, the dip in the road was unknown to her and she could not reasonably anticipate the unexpected danger the dip represented. Further, the jury could make the reasonable

inference that, from Mrs. Fannin's viewpoint, encountering the dip was, under the court's charge, something unforeseen, unexpected and unusual which produced the accident from which her death resulted. With due deference to the jury's prerogative, we cannot say that the evidence supporting the jury's finding is so weak or the contrary evidence so overwhelming that the finding should be set aside.

A finding of death by accidental means under more extended circumstances was upheld in *Metropolitan Life Insurance Co. v. Henkel*, 234 F.2d 69 (4th Cir. 1956). There, the insured, fleeing in an automobile from officers at a reckless and unlawful rate of speed of 90 miles an hour or more, unexpectedly came to a fork in an unfamiliar road, and the car ran onto the soft shoulder and overturned, inflicting injuries from which he died. The court said that the overturning of the car as a result of the unexpected coming upon the fork in the road and the consequent running onto the soft shoulder was something unforeseen, unexpected and unusual which produced the injury.

Next considered is the insurance company's assertion that there was a failure to discharge the burden to show that Sylvia G. Fannin's death resulted directly, and independently of all other causes, from bodily injuries received in an automobile collision. The thrust of the argument is that because the cause of death was not established by a death certificate or by medical testimony, there is no competent evidence of the true cause of death.

■■■ The assertion is, in essence, that the cause of Mrs. Fannin's death was not established by direct evidence; however, the true cause of death, like any other fact, may be established by circumstantial evidence. *Commonwealth Casualty & Ins. Co. v. Laurence*, 223 S.W.2d 337, 338 (Tex.Civ. App.—Fort Worth 1949, no writ); *Universal Life & Accident Ins. Co. v. Beaty*, 177 S.W.2d 244, 245 (Tex.Civ.App.—Waco 1944, no writ). There is testimony that Mrs. Fannin was alive and laughing at the time the

automobile she was driving encountered the dip in the road and was wrecked; immediately afterwards, she was dead, her body broken up and demolished. There is also testimony that Mrs. Fannin had suffered illnesses and was overweight with high blood pressure; but the lay witnesses who had observed her were competent to testify, as they did, that her health was good and she seemed all right, *Coxson v. Atlanta Life Ins. Co.*, 142 Tex. 544, 179 S.W.2d 943, 945 (1944), and if her condition did not materially contribute to her death, recovery under the policies is not prevented by reason of her bodily condition. *Mutual Benefit Health & Accident Ass'n v. Hudman*, 398 S.W.2d 110, 114 (Tex.1965).

The testimonial facts leading to and surrounding Mrs. Fannin's death authorized the submission of the issue inquiring if her death resulted directly, and independently of all other causes, from bodily injuries received in an automobile collision. From these facts, the jury could reasonably conclude that Mrs. Fannin's condition did not materially contribute to her death and that it resulted directly, and independently of all other causes, from bodily injuries received in the automobile accident. After considering and weighing all of the evidence we are not able to say that the evidence supporting the jury's finding is so weak or that the contrary evidence is so overwhelming that the finding should be set aside.

Last addressed is the assertion that Mr. Fannin failed to carry his burden on the suicide issue. The negative of suicide, which was injected by interposing that exclusion rather than pleading suicide as an affirmative defense, was an element of Mr. Fannin's cause of action to show that Mrs. Fannin's death was accidental. *Combined American Insurance Company v. Blanton*, 163 Tex. 225, 353 S.W.2d 847, 849 (1962).

The evidence of Mrs. Fannin's death by violent and external means raises a presumption that she did not commit suicide, for the law assumes that her natural instinct was to avoid injury and preserve her own life. However, this presumption, which neither constitutes evidence in itself

nor shifts the burden of proof, raises an issue of the fact, and compels the jury to find, that her death was not a suicide until and unless evidence to the contrary is introduced. *See and compare Republic Nat. Life Ins. Co. v. Heyward, supra*, at 558–59 and *Farley v. M M Cattle Company, supra*, at 756.

The insurance company argues that the undisputed acts of .Mrs. Fannin in driving her automobile at 110 miles per hour and disregarding the stop sign intentionally and of her own volition rebuts the presumption and precludes a finding that she did not take her own life. We are not persuaded that those acts in themselves rebut the presumption against suicide arising under this record which, except for the two acts singled out by the insurance company, demonstrates that Mrs. Fannin was normal and without a suicidal intent. Even assuming *arguendo* that these acts rebutted the presumption, the true issue does not then become, as the insurance company proposes, whether Mrs. Fannin's driving actions were intentional. That test was rejected in *American Casualty & Life Co. v. McCracken*, 173 S.W.2d 212, 213 (Tex.Civ.App.— Eastland 1943, writ ref'd). Moreover, that proposal, if followed to its logical conclusion, illogically brands as a suicide any driver's death resulting from an accident involving his intentionally driven automobile, irrespective of the circumstances. The true test would be whether the happening which produced the accident—*i. e.*, encountering the dip—was intentionally or accidentally encountered. The jury has answered that issue by finding that Mrs. Fannin's death resulted from an accident, and the answer has withstood the attack made on it.

In upholding the verdict returned by the jury, we recognize it is arguable that the jury might have reached different findings from the evidence and inferences deducible therefrom; but that would not justify the setting aside of those findings of fact the jury concluded were the most reasonable under the evidence, for our jurisdiction has found no better way of establishing facts than through the findings of a jury made

on sufficient evidence. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796–97 (1951). Accordingly, the insurance company's nine points of error are overruled.

The judgment is affirmed.