Eileen S. BEYER, Appellant,

v.

**EMPLOYEES RETIREMENT SYSTEM OF TEXAS, Group Life & Health Insurance Co., Alan Keith Beyer, Donald Lynn Beyer and Randy Ray Beyer, Appellees.**

No. 3–90–168–CV.

Court of Appeals of Texas, Austin.

April 17, 1991.

Rehearing Overruled June 5, 1991.

W. Hugh Harrell, Lubbock, for appellant.

Dan Morales, Atty. Gen., Anne E. Swenson, Asst. Atty. Gen., Austin, Elata Ely, Lubbock, Michael S. Hull, Brown Maroney & Oaks Hartline, Austin, for appellees.

Before POWERS, ABOUSSIE and KIDD, JJ.

POWERS, Justice.

Eileen S. Beyer appeals from a final judgment of the district court in her suit against the Employees Retirement System of Texas and others.[1] We will affirm the judgment.

## THE CONTROVERSY

The Texas Employees Uniform Group Insurance Benefits Act, Tex.Ins.Code Ann. art. 3.50–2 (1981 & Supp.1991), established a plan for the purchase of group life, acci-

---

1. In her lawsuit, Eileen S. Beyer sued the Employees Retirement System of Texas, Group Life and Health Insurance Company, and three individuals: Alan Keith Beyer, Donald Lynn Beyer, and Randy Ray Beyer, the sons of Eileen's deceased husband Wilburn.

Eileen alone has appealed from the district-court judgment; the appellees are the Employees Retirement System of Texas, Group Life and Health Insurance Company, and the three sons.

dent, and health insurance for State employees. Section 4 of the Act vests in a "trustee" the sole power to administer and implement the Act. The "trustee" is the State Board of Trustees of the Employees Retirement System of the State of Texas, a public body consisting of three appointed members and three members elected by the members of the State retirement system. Tex.Ins.Code, *supra*, art. 3.50–2 § 3(a)(11).

The present controversy centers around a group life-insurance policy written under the Act. The policy, written evidently by Group Life and Health Insurance Company, insured the life of Wilburn C. Beyer, a State employee.

In 1975, Beyer divorced his wife, Alice Maurine Beyer, with whom he had three sons, Alan Keith Beyer, Donald Lynn Beyer, and Randy Ray Beyer. The divorce decree required Wilburn to designate his sons as beneficiaries under the group life-insurance policy, apparently as one element of a property-settlement agreement incident to the divorce.

In June of 1984, Wilburn married Eileen. In April 1984, he had begun receiving treatment for a malignant brain tumor. On November 27, 1984, he executed a written instrument designating Eileen as beneficiary of the group life insurance, and on November 30, 1984, following surgery, he "assumed disability retirement status." He died March 6, 1986.

Wilburn's three sons filed in the Board a claim to the $70,000 insurance proceeds. They based their claims on the common-law theories of constructive trust and breach of contract, resulting from the 1975 divorce decree and property-settlement agreement, and Wilburn's alleged incompetence when he executed the 1984 written instrument naming Eileen beneficiary of the insurance proceeds.

Eileen filed in the Board a competing claim to the $70,000 insurance proceeds, based, of course, upon Wilburn's 1984 designation of beneficiary. She claimed, in addition, a legal right to recover interest,

attorney's fees, and a 12% penalty for any delay in payment of the $70,000.

When the controversy came before the Board, it amounted to a contested case governed by the provisions of the Texas Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ.Stat.Ann. art. 6252–13a, §§ 13–18 (Supp.1991). After hearing, the Board ordered that Eileen recover the $70,000 insurance proceeds. The Board rejected, however, Eileen's claim for interest, attorney's fees, and 12% additional damages, ruling that it had "no authority or jurisdiction to award" them.

## THE DISTRICT–COURT PROCEEDING

Eileen sued the retirement system in district court, naming as additional defendants Group Life and Health Insurance Company and Wilburn's three sons. Her petition declared that she "is appealing [sic] [the] administrative decision and award of the Board," but the balance of her pleading, including her prayer, reveals that she assailed only the Board's refusal to award her additional sums for interest, attorney's fees, and 12% additional damages. Concerning these additional sums, she prayed alternatively that the court: (1) award her judgment for such sums against all the defendants jointly and severally; (2) remand the controversy to the Board with an instruction that the Board assess and award her the additional sums; or (3) declare that the additional sums are not recoverable in an administrative proceeding before the Board, but would be recoverable in an independent original proceeding "before a court of law."

The district-court judgment recites that the cause came on for hearing, and that "the administrative record," that is to say, the record of the proceeding before the Board, "was received into evidence." *See* APTRA § 19(d)(3). The decretal portion of the judgment recites that: (1) "the appeal [sic] by Eileen S. Beyer is denied and she is to recover nothing [sic]" from the defendants; and (2) the Board's final order is affirmed.[2]

---

2. Wilburn's three sons, by cross-claims and counter-claims, sued in the district court to re-

cover judgment for the $70,000 insurance proceeds. Eileen and the Board moved that the

The language of the judgment indicates that the only claim tried by the district court was Eileen's suit for judicial review of the Board's final order, wherein she contended the court should have reversed the order because it failed to award her the additional sums. Nothing in the record suggests there was a trial of Eileen's original actions in district court seeking either an original award of the additional sums or a declaratory judgment that she was entitled to sue for them in an independent cause of action, perhaps in another district court in another suit. Consequently, it appears that Eileen abandoned her original actions in district court in favor of her suit for judicial review of the Board's final order under APTRA § 19.

In her appeal, Eileen expressly asserts only two points of error. The first pertains to her substantive claim for attorney's fees, 12% additional damages, and interest. Curiously, she implies that the Board may have lacked jurisdiction to adjudicate the competing claims to the $70,000. We believe that issue foreclosed, however, by the decision in *Employees Retirement System of Texas v. Blount*, 709 S.W.2d 646 (Tex. 1986). Whatever the anomalies of the opinion in that case, we are bound by its holding that the Board has such jurisdiction under the Act. *See* Cofer, *Judicial Review of Agency Law Decisions on Scope of Agency Authority*, 42 Baylor L.Rev. 255, 279–81 (1990). Eileen complains basically, in her first point of error, that the Board erred in failing to award her the additional sums.

In her second point of error, Eileen contends we must reverse the judgment below because the district court erroneously failed to file findings of fact and conclusions of law as required by Tex.R.Civ.P. Ann. 296 (Supp.1991).

claims be dismissed on the ground that Wilburn's sons had not perfected a suit for judicial review of the Board's final order, having failed to file in the Board the motion for rehearing required by APTRA § 16(e).

The decretal part of the district-court judgment simultaneously "denied and dismissed" the sons' cross-claims and counter-claims on the pleas to

## DISCUSSION AND HOLDINGS

Eileen's first point of error depends upon a premise that she possessed a legal right to interest, attorney's fees, and 12% additional damages. In her brief in this Court, as in her pleading in the district court, Eileen obscures the legal basis upon which she claimed these additional sums. We shall discuss the matter as best we can, given that obscurity.

The Board's authority to adjudicate the competing claims to the $70,000 insurance proceeds derives from § 4B of the Act. That statute provides as follows:[3]

> Adjudication of Claims. (a) The executive director of the Employees Retirement System of Texas has *exclusive* authority to determine all questions relating to ... payment of *claims* arising from programs or coverages *provided under* authority of this Act ...
>
> ....
>
> (c) A decision by the executive director under Subsection (a) of this section may be appealed only to the trustee. An appeal to the trustee is a contested case under the Administrative Procedure and Texas Register Act (Article 6252–13a, Vernon's Texas Civil Statutes).
>
> (d) On appeal [sic] of a decision made by the trustee under Subsection (c) of this section [sic], the standard [sic] of review is by substantial evidence.

This statute falls short of being a salutary example of the legislative drafter's art. We shall attempt to divine the legislative intention behind its provisions.

*Subsection (a).* We believe this subsection delegates to the executive director the authority to decide in the first instance "all questions relating to [the] payment of claims arising from programs or coverages provided under authority of this Act." The subsection characterizes the executive di-

the jurisdiction filed by Eileen and the Board. Because the three sons have not taken an appeal from that judgment, we need not discuss the patently contradictory declarations in the judgment.

3. We have added the emphasis in all quotations contained in our opinion.

rector's authority as "exclusive," but this characterization is immediately negated by subsections (c) and (d), which provide, respectively, for an administrative appeal to the "trustee" and for a suit for judicial review of the "trustee's" decision, as discussed below.

*Subsection (c).* In providing for an "appeal" to the "trustee," we believe the Legislature intended the trustee's authority to be co-extensive with that exercised initially by the executive director. Subsection (c) authorizes the trustee to decide *anew* any questions arising from coverages provided under the Act, as if there had been no intervening decision by the executive director. This must follow from the second sentence of subsection (c), which provides that the proceeding becomes a "contested case" when brought to the trustee. The reference to APTRA necessarily incorporates the definition of "contested case" in APTRA § 3(2) *and the provisions of AP-TRA §§ 13–18* which establish trial-type procedures governing such "contested cases."

■ *Subsection (d).* By stating that the substantial-evidence rule applies "on appeal" from the Board's decision, subsection (d) authorizes, by necessary implication, a suit for judicial review in a district court. The implication is compelled because the expression "substantial evidence" would be meaningless otherwise.

■ The reference to "substantial evidence" carries other implications when considered in conjunction with subsection (c), requiring that the Board's decision be made under the contested-case provisions of AP-TRA. The first additional implication is that any such suit for judicial review must be prosecuted in a district court of Travis County, as provided in APTRA § 19(b)(1). The second implication is that the expression "substantial evidence" dictates both the manner of trial in such lawsuits and the scope of the court's power of review: they are those associated with "substantial evidence" review, as opposed to those associated with review by "trial de novo," the two vastly different kinds of judicial review contemplated by APTRA § 19. Thus the

word "appeal," as used in subsection (d) in reference to such suits for judicial review, is a misnomer, albeit one frequently encountered in both statutes and judicial opinions.

We are somewhat at a loss to explain that part of subsection (d) which refers to an "appeal" under subsection (c), except to say that it supports the implication that the subsection creates and authorizes a suit for judicial review of the Board's decision in a contested case.

■ The foregoing discussion is necessary, in our view, to any rational discussion of Eileen's claim that she had a legal right to recover, in connection with her claim for the $70,000 insurance proceeds, the additional sums for interest, attorney's fees, and 12% damages.

Section 4B, as construed above, limits the Board's authority to deciding "questions" which relate to the "payment of claims arising from programs or coverages provided *under authority of this Act.*" If Eileen has a legal right to interest, attorney's fees, and the 12% additional damages, it must therefore be a legal right authorized by the terms of the Act.

Nothing in the Act explicitly gives the right to recover such additional sums in proceedings before the Board. Even if the Board could conceivably *create* such a legal right, by the enactment of regulations under its authority to administer and implement art. 3.50–2, or by its authority to decide all "questions" that arise from coverage provided under the Act, the Board *has not done so* either by rule or by a contested-case decision. Indeed, the Board determined, in Eileen's case, that it lacked the authority to create that right.

Some parts of Eileen's argument seem to imply that the Board was *bound* to create the legal right. We hold it was not. Assuming the Board had the statutory power to create the legal right, we find nothing in the statute which compels the Board to take such action and it has chosen not to do so.

■ Although Eileen does not expressly make the contention, some parts of her brief imply that she claimed a legal right to the additional sums by reason of Tex.Ins. Code Ann. art. 3.62 (1981), at least to the extent of recovering attorney's fees and 12% additional damages. Article 3.62 provides that the "holder" of certain insurance policies may recover damages equal to 12% of the amount of loss, together with a reasonable attorney's fee "for the prosecution and collection of such loss," if the insurer fails to pay the amount of the loss within 30 days after demand, the attorney's fees being "taxed as a part of the costs in the case." The last sentence of the statute directs that, in fixing attorney's fees, the "Court" shall take into consideration any benefits accruing to the insured which are "incident to the prosecution of the suit." The statute is found among the "Miscellaneous Provisions" of the Insurance Code; it is not found in art. 3.50–2, which establishes the plan for group life, accident, and health insurance for State employees.

■ By its literal terms, art. 3.62 creates a legal right to attorney's fees and 12% additional damages only in ordinary lawsuits before a judicial tribunal, or in a "court" proceeding. An administrative agency is not a "court" and its contested-case proceedings are not lawsuits, no matter that agency adjudications are sometimes referred to loosely as being "judicial" in nature. Agency adjudications do not reflect an exercise of the judicial power assigned to the "courts" of the State in Tex. Const. Ann. art. V, § 1 (Supp.1991); they are simply executive measures taken in the administration of statutory provisions.

In reference to an argument that the Legislature had unconstitutionally delegated a "judicial" power when it authorized an agency to value property for taxation, the Supreme Court of Texas stated as follows:

> We think the argument is based upon a confusion as to the meaning of the word "judicial." Article 5 of our Constitution provides for the organization of the judicial department of the government. It prescribes what courts shall be established and defines their jurisdiction, names the officers of courts and prescribes their powers.... But the whole scope of the article shows clearly what is meant by the judicial department of the government. The word "judicial" is, however, used, not with the strict accuracy in another sense. It is applied to the act of an executive officer, who in the exercise of his functions is required to pass upon facts and to determine his action by the facts found. This is sometimes called a "quasi judicial" function.

*Missouri, K. & T. Ry. Co. of Texas v. Shannon,* 100 Tex. 379, 100 S.W. 138, 141 (1907). Thus, art. 3.62 does not literally apply in contested cases under § 4B of the Act on a theory that the Board's adjudications thereunder are "judicial" proceedings to which art. 3.62 literally applies. And when the Supreme Court of Texas stated in *Blount* that we "erred in holding that proceedings before the [Employees Retirement System] trustees were not judicial in nature," *Blount,* 709 S.W.2d at 647, the court presumably was using the word "judicial" only in the loose sense referred to in *Shannon.* (We never made the holding the supreme court attributed to us. *See Blount v. Metropolitan Life Ins. Co.,* 677 S.W.2d 565 (Tex.App.1984), rev'd, 709 S.W.2d 646 (Tex.1986). We held, rather, that the Legislature had not delegated to the Board the power to adjudicate common-law claims and rights of action.)

If art. 3.62 cannot apply by its literal terms to the Board proceeding, it may apply therein only by construction, so as to create in Eileen a resulting legal right to the attorney's fees and 12% additional damages. The Board itself refused so to construe art. 3.62, evidently on a theory that art. 3.62 was not included within the Act (art. 3.50–2) which limited the Board's authority to the decision of "all questions relating to ... payment of claims arising from programs or coverages provided under *authority of this Act,*" as stated in § 4B of the Act. Or perhaps the Board declined to so construe art. 3.62 on the theory that its terms applied only to ordinary lawsuits in district courts, as the words of the statute imply.

In all events, we believe we should defer to the Board's construction of arts. 3.62

and 3.50–2, under the "rule of departmental construction," the import of those statutes being uncertain and the Board's construction being reasonable under the theories we have mentioned.[4] *Stanford v. Butler*, 142 Tex. 692, 181 S.W.2d 269, 273 (1944).

For the reasons given, we overrule Eileen's first point of error.

In her second point of error, Eileen complains of the failure of the district court to file findings of fact and conclusions of law. We conclude the failure did not constitute reversible error.

Given that § 4B of the Act provides for "substantial evidence" review of the Board's final order, APTRA § 19(e) *prohibited* the district court to receive evidence which it might weigh in order to make original fact findings. It would have been fruitless for the district court to make findings of fact. Moreover, we see no necessity for the district court to file conclusions of law in cases like the present in which we are obliged to sustain the judgment below on any proper legal ground, even if the district court rested its judgment on an erroneous legal ground. 4 McDonald, Texas Civil Practice § 16.05, at 11 (rev. ed. 1984). A proper legal ground exists here in the Board's interpretation of the statutes entrusted to its administration, an interpretation that we have held is not erroneous.

We therefore overrule Eileen's second point of error.

Finding no error as assigned, we affirm the judgment below.

ABOUSSIE, J., not participating.

---

**4.** As stated in *Stanford,* the rule of departmental construction holds that a court should ordinarily "adopt and uphold a construction placed upon a statute by an executive officer or department charged with its administration, if the statute is ambiguous or uncertain, and the construction so given it is reasonable." *Stanford,* 181 S.W.2d at 273.

A court is not *bound,* of course, to uphold the agency construction of a statute entrusted to its administration. It is only a matter of deference, founded upon the theory that the agency likely has superior knowledge of the subject matter involved and superior experience in dealing with practical problems raised by the statute, together with the notion that the agency must ultimately carry out its functions and duties under any new meaning assigned to the statute by a court.