TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON MOTION FOR REHEARING






NO. 03-97-00253-CV





Adrian M. Butler, Appellant


v.


Group Life and Health Insurance Company and Employees

Retirement System of Texas, Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT

NO. 95-02531, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING





 To address certain issues raised in the motion for rehearing we withdraw our earlier opinion
and judgment issued January 8, 1998, and substitute this one in its place.

 Appellees, Group Life and Health Insurance Company and Employees Retirement System
of Texas (the "Board" of ERS), denied appellant Adrian Butler's claim for insurance benefits under her
brother's policy and her claim for additional damages under the Texas Insurance Code. Butler sought
judicial review in the district court, which affirmed the Board's order. Butler appeals that judgment in
several points of error claiming mainly that the order was not supported by substantial evidence. She also
claims the trial court erred in failing to award her statutory interest and attorney's fees. We will reverse in
part the judgment of the trial court and render judgment that Butler recover the insurance benefits claimed;
we will affirm the trial court's judgment that Butler is not entitled to statutory interest or attorney's fees
under the Insurance Code.


FACTUAL AND PROCEDURAL BACKGROUND

 In February 1992, while driving to Mississippi, Charles LaGrand and two friends stopped
in Grambling, Louisiana, to stay overnight at an apartment belonging to Dana Grooms. Before they arrived
at Grooms's apartment, LaGrand and his friends had been drinking beer. At the apartment they continued
to drink, while discussing colleges and waiting for Grooms's boyfriend, Otis Robinson. When Robinson
arrived, he pulled out a .380 semiautomatic Davis handgun, removed the clip, and set both the gun and its
clip on the table in the living room. Shortly thereafter, LaGrand and his friends joined Robinson and
Grooms in her bedroom; someone brought in the gun and clip and placed them on the dresser. As the
discussion turned to guns, one of LaGrand's friends picked up the gun, which did not contain the clip at
the time, and began "dry-firing" the weapon. (1) LaGrand took part in this foolhardy behavior, pointing the
gun in his mouth and dry-firing twice without incident. At some point in the next several minutes, the clip
was placed in the gun. LaGrand was not conversing with or facing the person who placed the clip in the
gun; there was no indication that he saw the clip being placed in the gun. LaGrand began playing with the
gun again; this time when he pulled the trigger the gun fired a bullet, striking him in the head and killing him.

 At the time of his death, LaGrand was insured under a life insurance policy issued by Group
Life and Health Insurance Company, under the terms of the Texas Employees Uniform Group Insurance
Act, which is administered by the Board of Trustees of the ERS. See Tex. Ins. Code Ann. art. 3.50-2
(West 1981 & Supp. 1998). The policy named Butler as LaGrand's beneficiary. After paying $4,000 in
basic death benefits, Group Life denied accidental death benefits of $230,000 and term life benefits of
$26,000 on the grounds that LaGrand's death was not accidental and that it was intentionally self-inflicted. 
After a contested case hearing, the Board denied recovery in a final order. Butler sought judicial review;
the district court affirmed the Board's order.


DISCUSSION

 The standard of review of the Board's order is that provided for cases of "substantial
evidence" review under the terms of the Administrative Procedure Act (APA). See Tex. Gov't Code Ann.
§ 2001.174 (West 1998); see also Tex. Ins. Code Ann. art. 3.50-2, § 4B(d) (West Supp. 1998). The
agency order may not be reversed unless the agency record demonstrates that appellant's substantial rights
have been prejudiced by the Board's commission of one of the errors listed in section 2001.174(2)(A)-(F)
of the APA. In her numerous points of error, Butler cites subsections (A), (B), (D), (E), and (F) as the
bases for reversal. (2)

 In points of error five through twelve, Butler specifically claims the Board's order denying
her insurance benefits was not supported by substantial evidence. In conducting a substantial evidence
review, we determine whether the evidence as a whole is such that reasonable minds could have reached
the conclusion the agency must have reached in order to take the disputed action. Texas State Bd. of
Dental Exam'rs v. Sizemore, 759 S.W.2d 114, 116 (Tex. 1988), cert. denied, 490 U.S. 1080 (1989);
Texas Health Facilities Comm'n v. Charter Medical-Dallas, Inc., 665 S.W.2d 446, 453 (Tex. 1984). 
We may not substitute our judgment for that of the agency and may consider only the record on which the
agency based its decision. Sizemore, 759 S.W.2d at 116. "The true test is not whether the agency
reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken
by the agency." Charter Medical, 665 S.W.2d at 452.

 LaGrand was covered under two contracts. The contract for accidental death benefits
provides in pertinent part:


 Accidental bodily injury means a violent, external Accidental Bodily Injury resulting,
directly and independently of all other causes, from an accident . . . . 



The second contract providing for term life insurance excludes coverage



 [F]or any loss caused by or resulting from intentionally self-inflicted injuries, suicide or
any attempt thereat, while sane or insane.



The accidental death benefits contract carries the same exclusion for "intentionally self-inflicted injuries." 
The Board denied recovery under both contracts, finding that LaGrand's death was not an accident and
that it was the result of an intentionally self-inflicted injury. In order to affirm the order this Court must
determine that reasonable bases exist in the record to support the agency's findings such that reasonable
minds could have reached the same conclusions.


Accidental Death

 Injury or death is accidental and within the coverage of an insurance policy,


 [I]f, from the view point of the insured, the injuries are not the natural and probable
consequence of the action or occurrence which produced the injury; or in other words,
if the injury could not be reasonably anticipated by insured, or would not ordinarily
follow from the action or occurrence which caused the injury.



Republic Nat'l Life Ins. Co. v. Heyward, 536 S.W.2d 549, 557 (Tex. 1976) (emphasis added); see also
Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 826-28 (Tex. 1997) (applying Heyward to
determine meaning of accidental occurrence). The burden of proof was upon Butler to prove that her
brother died from a "violent, external accidental bodily injury resulting, directly and independently of all
other causes, from an accident" within the meaning of Heyward.

 The record reveals: (1) LaGrand had dry-fired the gun twice without incident; (2) other
people in the room had dry-fired the gun numerous times without incident; (3) LaGrand did not put a
loaded clip in the gun; and (4) he had no apparent knowledge that a loaded clip had been placed in the gun
before he intentionally pulled the trigger, firing the fatal shot. As part of their evidentiary support, appellees
offer evidence that the gun could not have fired a live round after being dry-fired unless someone placed
a loaded clip in the gun, to imply that LaGrand knew or should have known a loaded clip had been placed
in the gun. This evidence raises an inference that someone placed a loaded clip in the gun after it was dry-fired, nothing more. Appellees offer no evidence that LaGrand saw or had knowledge of a loaded clip
being placed in the gun. Although the insured intentionally waived a gun towards his head and pulled the
trigger, his death was not the natural and probable consequence of his action, in light of the surrounding
circumstances and the lack of evidence of LaGrand's knowledge of the loaded clip. Rather, the evidence
shows that LaGrand had recently fired an unloaded gun at his head without incident and could have
reasonably concluded the gun remained unloaded before he foolishly, but naively, fired it the third time.

 In disputing the evidence, appellees first argue that Grooms did not initially reveal to the
police that she saw one of LaGrand's friends place the clip in the gun. At the administrative hearing,
Grooms testified that she saw someone other than LaGrand place a live clip in the gun but did not tell the
police fearing it would get that person in trouble. On appeal, appellees contend this "inconsistency" renders
her hearing testimony incredible. We do not find her earlier silence and her affirmative statement at the
hearing to be inconsistent. Second, appellees contend her testimony wasn't credible because Grooms
initially told the police that the group had warned LaGrand not to play with the gun. Grooms later testified
at the hearing that no one had warned LaGrand and that she had lied to the police in making her statement
in an attempt to exculpate those present at the time of the shooting. The record shows the Grambling police
department, after taking the witnesses' statements and without the benefit of Grooms' trial testimony,
concluded that LaGrand's death was accidental. 

 Butler was required to prove a negative--that LaGrand's death was not the natural and
probable consequence of his actions. Because he is deceased, the fact finder must look to inferential
evidence in determining whether his death was an accident from LaGrand's point of view. See, e.g.,
Connecticut Gen. Life Ins. Co. v. Tommie, 619 S.W.2d 199 (Tex. Civ. App.--Texarkana 1981, writ
ref'd n.r.e.); Freeman v. Crown Life Ins. Co., 580 S.W.2d 897 (Tex. Civ. App.--Texarkana 1979, writ
ref'd n.r.e.). If LaGrand did not place the clip in the gun or see another do so, one must infer he did not
reasonably anticipate that his actions would cause his death. Butler offered eye-witness testimony that
another individual placed the clip in the gun from a position that LaGrand could not have observed. This
evidence was not controverted. The absence of any contrary evidence leads to the only reasonable
inference: that from LaGrand's point of view death would not ordinarily follow from dry-firing again a gun
he had twice dry-fired without incident. 

 While the insured's actions may have been foolish and fraught with risk, playing with what
one believes to be an unloaded gun is not an action that the insured should have reasonably anticipated
would probably result in death. See Connecticut Gen. Life Ins. Co., 619 S.W.2d at 202-03 (death from
intentionally placing rope around neck to heighten sexual sensation was accident within meaning of
Heyward); see also Freeman, 580 S.W.2d at 900 (while insured's death may have been result of his own
negligence, that does not prevent his death from being accident within meaning of accident insurance
policy). We hold that LaGrand's death was not the natural and probable consequence of his actions, and
that it could not have been reasonably anticipated by the insured under these circumstances. Because there
is simply no evidence to indicate otherwise, we conclude the Board's finding that LaGrand's death was not
accidental is not supported by substantial evidence. In light of all the evidence, reasonable minds could not
conclude that LaGrand died from anything other than an accident.


Intentionally Self-Inflicted Injury

 The Board denied Butler accidental death and term life benefits on another ground, finding
that LaGrand's death fit within the exclusion for "intentionally self-inflicted injuries." In determining whether
coverage was excluded by an intentional-injury provision, the Texas Supreme Court has relied on the
definition of intent provided in the Restatement (Second) of Torts:


 An insured intends to injure or harm another if he intends the consequences of his act,
or believes that they are substantially certain to follow.



State Farm Fire & Casualty Co. v. S.S., 858 S.W.2d 374, 378 (Tex. 1993) (citing Restatement
(Second) of Torts § 8 (1965) (emphasis added)). Although S.S. discussed the exclusion based on
intentional injuries inflicted by a third person, the meaning of intentional injury is applicable to the present
provision which excludes intentional self-inflicted injuries. Thus, in order to affirm the Board's order we
must find that substantial evidence supports the finding that LaGrand believed his death was substantially
certain to follow his actions.

 Again, there is no evidence that the insured had any knowledge the clip had been placed
in the gun when he placed it to his head and fired a third time. Under these circumstances, LaGrand could
not have believed his death was substantially certain to follow his action. LaGrand knew only that he had
twice fired the gun at himself, as had others, without incident. S.S. makes clear the focus rests on whether
the insured intended the injury. 858 S.W.2d at 376-77. Although it is undisputed that LaGrand
intentionally waived the gun near his head and fired it, it cannot be concluded in light of the evidence that
LaGrand intended to injure himself or that he believed his death was substantially certain to follow his
foolish actions. Furthermore, evidence of a violent and external death raises the presumption that the
insured did not intend to commit suicide because the law presumes that one's natural instinct is to avoid
injury and preserve one's own life. See Kentucky Cent. Life Ins. Co. v. Fannin, 575 S.W.2d 76, 82
(Tex. Civ. App.--Amarillo 1978, no writ) (presumption compels jury to find that death was not suicide
until or unless evidence to the contrary is introduced). LaGrand's mother and sister both testified that
LaGrand was not suicidal but that he had recently discussed his plans for the future. His mother stated that
LaGrand was planning soon to return to college. This was the reason for the road trip: LaGrand and his
friends were looking into Alcorn State, a university with a potential scholarship for LaGrand. Butler and
her brother spoke on the phone the day before he died. LaGrand did not seem depressed or upset; to the
contrary, he seemed excited about the road trip and his future prospects. Such circumstantial evidence
supports the presumption that the insured did not commit suicide or intentionally inflict the injuries that led
to his death. We hold the Board's finding that LaGrand died as a result of intentionally self-inflicted injuries
is not supported by substantial evidence.

 It is unreasonable to conclude that LaGrand's death was not an accident and was
intentionally self-inflicted under the evidence in light of prevailing Texas law. Because the Board's order
denying Butler accidental death and term life benefits on both grounds is not supported by substantial
evidence, we sustain points of error five through twelve. (3)


Statutory Interest and Attorney's Fees

 In points of error thirteen and fourteen, Butler claims the trial court erred in affirming the
Board's order which denied her claim for statutory interest and attorney's fees under article 21.55 of the
Texas Insurance Code. Article 21.55 requires an insurer to pay to the policyholder or beneficiary, in
addition to the principal amount owed under the insurance policy, eighteen percent per annum and
reasonable attorney's fees in the event the insurer, liable on the policy, does not comply with the time
requirements of article 21.55. Tex. Ins. Code Ann. art. 21.55 (West Supp. 1998). It is undisputed that
the Board did not comply with the requirements of article 21.55. The only issue before us is whether article
21.55 applies to this case in which LaGrand was insured under a policy administered by the Employees
Retirement System of Texas. We conclude that it does not.

 The Texas Employees Uniform Group Insurance Benefits Act established a plan for the
purchase of group life, accident, and health insurance for state employees. Tex. Ins. Code Ann. art. 3.50-2
(West 1981 & Supp. 1997). The administration and implementation of the Act is vested solely with the
Board, and the executive director of ERS has the exclusive authority to decide "all questions relating to
enrollment in or payment of claims arising from programs or coverages provided under authority of this
Act." Id. art. 350-2, § 4B(a). Thus, LaGrand's insurance coverage under ERS was created by the
Legislature. See Employees Retirement Sys. v. Blount, 709 S.W.2d 646, 647 (Tex. 1986); see also
Montgomery v. Blue Cross & Blue Shield, 923 S.W.2d 147, 151 (Tex. App.--Austin 1996, writ
denied). As such, Butler's cause of action is derived from statute and the "statutory provisions are
mandatory and exclusive and must be complied with in all respects." Blount, 709 S.W.2d at 647. Article
3.50-2 does not authorize the Board to grant statutory interest or attorney's fees to the policyholder or
beneficiary in the event of noncompliance with statutory requirements. Tex. Ins. Code Ann. art. 3.50-2. 
Because the statute provides Butler an exclusive remedy, she is not entitled to recover interest or attorney's
fees under a different statutory provision.

 We have decided this very issue in Beyer v. Employees Retirement System, 808 S.W.2d
622 (Tex. App.--Austin 1991, writ denied). In Beyer, the Board awarded the beneficiary her insurance
claim but rejected her request for statutory interest and attorney's fees. On appeal, this Court held that
article 3.50-2 did not grant the beneficiary the legal right to recover such additional sums and that section
3.62 of the Insurance Code, the predecessor to article 21.55, could not be construed to apply to an ERS
insurance proceeding. Id. at 626-27 (citing Tex. Ins. Code Ann. art. 3.62 (1981)). (4) Butler claims that
Beyer is inapposite to the instant case because the Legislature has since amended section 3.62, removing
any references to "court" and replacing it with "trier of fact" in article 21.55(6). (5) Thus, Butler argues, the
Legislature intended article 21.55 to apply more broadly than the former article 3.62. See Beyer, 808
S.W.2d at 627 (literal language of article 3.62 limits its application to "court" proceedings). Although we
pay heed to the canons of statutory construction, we find they in no way undermine the meaning of Beyer. 
In that case, we first inquired into the nature of the statute which governs insurance administered by ERS
and held that the beneficiary could not recover statutory interest and attorney's fees because these
additional remedies were not authorized by the governing statute. Id. at 626 (citing Tex. Ins. Code Ann.
art. 3.50-2 (West 1981 & Supp. 1997)). "Nothing in the Act explicitly gives the right to recover such
additional sums in proceedings before the Board." Id. We then looked at article 3.62 and determined that
it did not apply to an administrative hearing because an agency adjudication is not a "lawsuit" but an
"executive measure taken in the administration of statutory provisions." Id. at 627. Our determination was
based on the literal language of article 3.62 and a reasonable construction of the provision in question. Id. 
In the instant case, we do not interpret the statute as amended to apply to a contested case hearing for the
same policy reasons we found article 3.62 to be inapplicable to such a proceeding. Article 21.55 applies
to "ordinary lawsuits" brought in district court, not to an administrative proceeding and not to judicial review
of an agency order.

 We overrule points of error thirteen and fourteen.


CONCLUSION

 Because we determine the Board's order denying Butler recovery for accidental death
and term life benefits was not supported by substantial evidence, we reverse the trial court's judgment and
render judgment that Butler recover the benefits under the accidental death and term life insurance policies. 
Because we determine the amendment to the Insurance Code does not change the result in Beyer, we
affirm the trial court's judgment denying statutory interest and attorney's fees.



 Bea Ann Smith, Justice

Before Justices Powers, Aboussie and B. A. Smith

Reversed and Rendered in Part; Affirmed in Part

Filed: February 12, 1998

Publish

1. Dry-firing means to fire an empty gun, i.e., a gun without a clip inside, or to fire a gun with an empty
clip, i.e., a clip without ammunition. Dry-firing allows the trigger to release without dispelling any bullets,
resulting in a clicking noise. A .380 semiautomatic Davis can also be dry-fired once with a loaded clip in
the gun but only if the loaded clip is placed in the gun after the slide of the gun is pulled rearward, or
"cocked."
2. Section 2001.174 provides, in pertinent part, that review of a contested case decision under the
substantial evidence rule, the court may not substitute its judgment for the judgment of the state agency but:


(2) shall reverse or remand for further proceedings if substantial rights of the appellant have
been prejudiced because the administrative findings, inferences or conclusions, or decisions
are:


 (A) in violation of a constitutional or statutory provision;


 (B) in excess of the agency's statutory authority;


 . . .


 (D) affected by other error of law;


 (E) not reasonably supported by substantial evidence considering the reliable and
probative evidence in the record as a whole; or


 (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted
exercise of discretion.


Tex. Gov't Code Ann. § 2001.174.
3. Because we find the Board's order was not supported by substantial evidence, we need not reach
points of error fifteen through twenty-four in which Butler claims the order was in violation of statute, in
excess of statutory authority, affected by an error of law, arbitrary and capricious, and characterized by
an abuse of discretion. Nor need we reach points of error one through four in which Butler claims the
Board applied the incorrect standard of law.
4. Acts of June 28, 1951, 52d Leg., R.S., ch. 491, art. 3.62, 1951 Tex. Gen. Laws 868, 920 (repealed
1991).
5. Section 6 of article 21.55, effective in 1991, has since been amended in 1995. Prior to 1995, section
6 read "together with reasonable attorney's fees as determined by the trier of fact." The Legislature
removed any reference to "trier of fact" and the current section now reads:


 In all cases where a claim is made pursuant to a policy of insurance and the insurer liable
therefor is not in compliance with the requirements of this article, such insurer shall be liable to
pay . . . 18 percent per annum of the amount of such claim as damages, together with
reasonable attorney's fees.


Tex. Ins. Code. Ann. art. 21.55(6) (West Supp. 1998).


r">CONCLUSION

 Because we determine the Board's order denying Butler recovery for accidental death
and term life benefits was not supported by substantial evidence, we reverse the trial court's judgment and
render judgment that Butler recover the benefits under the accidental death and term life insurance policies. 
Because we determine the amendment to the Insurance Code does not change the result in Beyer, we
affirm the trial court's judgment denying statutory interest and attorney's fees.



 Bea Ann Smith, Justice

Before Justices Powers, Aboussie and B. A. Smith

Reversed and Rendered in Part; Affirmed in Part

Filed: February 12, 1998

Publish

1. Dry-firing means to fire an empty gun, i.e., a gun without a clip inside, or to fire a gun with an empty
clip, i.e., a clip without ammunition. Dry-firing allows the trigger to release without dispelling any bullets,
resulting in a clicking noise. A .380 semiautomatic Davis can also be dry-fired once with a loaded clip in
the gun but only if the loaded clip is placed in the gun after the slide of the gun is pulled rearward, or
"cocked."
2. Section 2001.174 provides, in pertinent part, that review of a contested case decision under the
substantial evidence rule, the court may not substitute its judgment for the judgment of the state agency but:


(2) shall reverse or remand for further proceedings if substantial rights of the appellant have
been prejudiced because the administrative findings, inferences or conclusions, or decisions
are:


 (A) in violation of a constitutional or statutory provision;


 (B) in excess of the agency's statutory authority;


 . . .


 (D) affected by other error of law;


 (E) not reasonably supported by substantial evidence considering the reliable and
probative evidence in the record as a whole; or


 (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted
exercise of discretion.


Tex. Gov't Code Ann. § 2001.174.
3. Because we find the Board's order was not supported by substantial evidence, we need not reach
points of error fifteen through twenty-four in which Butler claims the order was in violation of statute, in
excess of statutory authority, affected by an error of law, arbitrary and capricious, and characterized by
an abuse of discretion. Nor need we reach points of error one through four in which Butler claims the
Board applied the incorrect standard of law.
4. Acts of June 28, 1951, 52d Leg., R.S., ch. 491, art. 3.62, 1951 Tex. Gen. Laws 868, 920 (repealed
1991).
5. Section 6 of article 21.55, effective in 1991, has since been amended in 1995. Prior to 1995, section
6 read "together with reasonable attorney's fees as determined by the trier of fact." The Legislature
removed any reference to "trier of fact" and the current section now reads: