Adrian M. BUTLER, Appellant,

v.

**GROUP LIFE AND HEALTH INSUR-ANCE COMPANY and Employees Retirement System of Texas, Appellees**

No. 03–97–00253–CV.

Court of Appeals of Texas,
Austin.

Feb. 12, 1998.

Robert Lewis Warren, Camp & Warren, Fort Worth, for appellant.

Dan Morales, Atty. Gen., Don Walker, Asst. Atty. Gen., Administrative Law Div., Michael S. Hull, Maroney, Crowley & Bankston, Austin, for appellees.

Before POWERS, ABOUSSIE and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

To address certain issues raised in the motion for rehearing we withdraw our earlier opinion and judgment issued January 8, 1998, and substitute this one in its place.

Appellees, Group Life and Health Insurance Company and Employees Retirement System of Texas (the "Board" of ERS), denied appellant Adrian Butler's claim for insurance benefits under her brother's policy and her claim for additional damages under the Texas Insurance Code. Butler sought judicial review in the district court, which affirmed the Board's order. Butler appeals that judgment in several points of error claiming mainly that the order was not supported by substantial evidence. She also claims the trial court erred in failing to award her statutory interest and attorney's fees. We will reverse in part the judgment of the trial court and render judgment that Butler recover the insurance benefits

claimed; we will affirm the trial court's judgment that Butler is not entitled to statutory interest or attorney's fees under the Insurance Code.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 1992, while driving to Mississippi, Charles LaGrand and two friends stopped in Grambling, Louisiana, to stay overnight at an apartment belonging to Dana Grooms. Before they arrived at Grooms's apartment, LaGrand and his friends had been drinking beer. At the apartment they continued to drink, while discussing colleges and waiting for Grooms's boyfriend, Otis Robinson. When Robinson arrived, he pulled out a .380 semiautomatic Davis handgun, removed the clip, and set both the gun and its clip on the table in the living room. Shortly thereafter, LaGrand and his friends joined Robinson and Grooms in her bedroom; someone brought in the gun and clip and placed them on the dresser. As the discussion turned to guns, one of LaGrand's friends picked up the gun, which did not contain the clip at the time, and began "dry-firing" the weapon.[1] LaGrand took part in this foolhardy behavior, pointing the gun in his mouth and dry-firing twice without incident. At some point in the next several minutes, the clip was placed in the gun. LaGrand was not conversing with or facing the person who placed the clip in the gun; there was no indication that he saw the clip being placed in the gun. LaGrand began playing with the gun again; this time when he pulled the trigger the gun fired a bullet, striking him in the head and killing him.

At the time of his death, LaGrand was insured under a life insurance policy issued by Group Life and Health Insurance Company, under the terms of the Texas Employees Uniform Group Insurance Act, which is administered by the Board of Trustees of the ERS. *See* Tex. Ins.Code Ann. art. 3.50–2 (West 1981 & Supp.1998). The policy named

---

1. Dry-firing means to fire an empty gun, i.e., a gun without a clip inside, or to fire a gun with an empty clip, i.e., a clip without ammunition. Dry-firing allows the trigger to release without dispelling any bullets, resulting in a clicking noise. A

.380 semiautomatic Davis can also be dry-fired *once* with a loaded clip in the gun but only if the loaded clip is placed in the gun after the slide of the gun is pulled rearward, or "cocked."

Butler as LaGrand's beneficiary. After paying $4,000 in basic death benefits, Group Life denied accidental death benefits of $230,000 and term life benefits of $26,000 on the grounds that LaGrand's death was not accidental and that it was intentionally self-inflicted. After a contested case hearing, the Board denied recovery in a final order. Butler sought judicial review; the district court affirmed the Board's order.

## DISCUSSION

The standard of review of the Board's order is that provided for cases of "substantial evidence" review under the terms of the Administrative Procedure Act (APA). *See* Tex. Gov't Code Ann. § 2001.174 (West 1998); *see also* Tex. Ins.Code Ann. art. 3.50–2, § 4B(d) (West Supp.1998). The agency order may not be reversed unless the agency record demonstrates that appellant's substantial rights have been prejudiced by the Board's commission of one of the errors listed in section 2001.174(2)(A)–(F) of the APA. In her numerous points of error, Butler cites subsections (A), (B), (D), (E), and (F) as the bases for reversal.[2]

In points of error five through twelve, Butler specifically claims the Board's order denying her insurance benefits was not supported by substantial evidence. In conducting a substantial evidence review, we determine whether the evidence as a whole is such that reasonable minds could have reached the conclusion the agency must have reached in order to take the disputed action. *Texas State Bd. of Dental Exam'rs v. Sizemore,* 759 S.W.2d 114, 116 (Tex.1988), *cert. denied,* 490 U.S. 1080, 109 S.Ct. 2100, 104 L.Ed.2d 662 (1989); *Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.,* 665 S.W.2d 446, 453 (Tex.1984). We may not substitute

our judgment for that of the agency and may consider only the record on which the agency based its decision. *Sizemore,* 759 S.W.2d at 116. "The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency." *Charter Medical,* 665 S.W.2d at 452.

LaGrand was covered under two contracts. The contract for accidental death benefits provides in pertinent part:

Accidental bodily injury means a violent, external Accidental Bodily Injury resulting, directly and independently of all other causes, from an accident. . . .

The second contract providing for term life insurance excludes coverage

[F]or any loss caused by or resulting from intentionally self-inflicted injuries, suicide or any attempt thereat, while sane or insane.

The accidental death benefits contract carries the same exclusion for "intentionally self-inflicted injuries." The Board denied recovery under both contracts, finding that LaGrand's death was not an accident and that it was the result of an intentionally self-inflicted injury. In order to affirm the order this Court must determine that reasonable bases exist in the record to support the agency's findings such that reasonable minds could have reached the same conclusions.

### Accidental Death

 Injury or death is accidental and within the coverage of an insurance policy,

[I]f, from the view point of the insured, the injuries are not the *natural and probable consequence* of the action or occurrence which produced the injury; or in other words, if the injury could not be *reason-*

---

2. Section 2001.174 provides, in pertinent part, that review of a contested case decision under the substantial evidence rule, the court may not substitute its judgment for the judgment of the state agency but:

(2) shall reverse or remand for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences or conclusions, or decisions are:

(A) in violation of a constitutional or statutory provision;

(B) in excess of the agency's statutory authority;

. . .

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code Ann. § 2001.174.

*ably anticipated* by insured, or would not ordinarily follow from the action or occurrence which caused the injury.

*Republic Nat'l Life Ins. Co. v. Heyward*, 536 S.W.2d 549, 557 (Tex.1976) (emphasis added); *see also Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 826–28 (Tex.1997) (applying *Heyward* to determine meaning of accidental occurrence). The burden of proof was upon Butler to prove that her brother died from a "violent, external accidental bodily injury resulting, directly and independently of all other causes, from an accident" within the meaning of *Heyward*.

■ The record reveals: (1) LaGrand had dry-fired the gun twice without incident; (2) other people in the room had dry-fired the gun numerous times without incident; (3) LaGrand did not put a loaded clip in the gun; and (4) he had no apparent knowledge that a loaded clip had been placed in the gun before he intentionally pulled the trigger, firing the fatal shot. As part of their evidentiary support, appellees offer evidence that the gun could not have fired a live round *after* being dry-fired *unless* someone placed a loaded clip in the gun, to imply that LaGrand knew or should have known a loaded clip had been placed in the gun. This evidence raises an inference that someone placed a loaded clip in the gun after it was dry-fired, nothing more. Appellees offer no evidence that LaGrand saw or had knowledge of a loaded clip being placed in the gun. Although the insured intentionally waived a gun towards his head and pulled the trigger, his death was not the natural and probable consequence of his action, in light of the surrounding circumstances and the lack of evidence of LaGrand's knowledge of the loaded clip. Rather, the evidence shows that LaGrand had recently fired an unloaded gun at his head without incident and could have reasonably concluded the gun remained unloaded before he foolishly, but naively, fired it the third time.

In disputing the evidence, appellees first argue that Grooms did not initially reveal to the police that she saw one of LaGrand's friends place the clip in the gun. At the administrative hearing, Grooms testified that she saw someone other than LaGrand place a live clip in the gun but did not tell the police

fearing it would get that person in trouble. On appeal, appellees contend this "inconsistency" renders her hearing testimony incredible. We do not find her earlier silence and her affirmative statement at the hearing to be inconsistent. Second, appellees contend her testimony wasn't credible because Grooms initially told the police that the group had warned LaGrand not to play with the gun. Grooms later testified at the hearing that no one had warned LaGrand and that she had lied to the police in making her statement in an attempt to exculpate those present at the time of the shooting. The record shows the Grambling police department, after taking the witnesses' statements and without the benefit of Grooms' trial testimony, concluded that LaGrand's death was accidental.

Butler was required to prove a negative— that LaGrand's death was *not* the natural and probable consequence of his actions. Because he is deceased, the fact finder must look to inferential evidence in determining whether his death was an accident from LaGrand's point of view. *See, e.g., Connecticut Gen. Life Ins. Co. v. Tommie*, 619 S.W.2d 199 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.); *Freeman v. Crown Life Ins. Co.*, 580 S.W.2d 897 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.). If LaGrand did not place the clip in the gun or see another do so, one must infer he did not reasonably anticipate that his actions would cause his death. Butler offered eye-witness testimony that another individual placed the clip in the gun from a position that LaGrand could not have observed. This evidence was not controverted. The absence of any contrary evidence leads to the only reasonable inference: that from LaGrand's point of view death would not ordinarily follow from dry-firing again a gun he had twice dry-fired without incident.

While the insured's actions may have been foolish and fraught with risk, playing with what one believes to be an unloaded gun is not an action that the insured should have reasonably anticipated would probably result in death. *See Connecticut Gen. Life Ins. Co.*, 619 S.W.2d at 202–03 (death from intentionally placing rope around neck to heighten sexual sensation was accident within meaning

of *Heyward* ); *see also Freeman,* 580 S.W.2d at 900 (while insured's death may have been result of his own negligence, that does not prevent his death from being accident within meaning of accident insurance policy). We hold that LaGrand's death was not the natural and probable consequence of his actions, and that it could not have been reasonably anticipated by the insured under these circumstances. Because there is simply no evidence to indicate otherwise, we conclude the Board's finding that LaGrand's death was not accidental is not supported by substantial evidence. In light of all the evidence, reasonable minds could not conclude that LaGrand died from anything other than an accident.

### Intentionally Self-Inflicted Injury

■ The Board denied Butler accidental death and term life benefits on another ground, finding that LaGrand's death fit within the exclusion for "intentionally self-inflicted injuries." In determining whether coverage was excluded by an intentional-injury provision, the Texas Supreme Court has relied on the definition of intent provided in the Restatement (Second) of Torts:

> An insured intends to injure or harm another if he intends the consequences of his act, or believes that they are *substantially certain* to follow.

*State Farm Fire & Casualty Co. v. S.S.,* 858 S.W.2d 374, 378 (Tex.1993) (citing Restatement (Second) of Torts § 8 (1965) (emphasis added)). Although *S.S.* discussed the exclusion based on intentional injuries inflicted by a third person, the meaning of intentional injury is applicable to the present provision which excludes intentional *self-inflicted* injuries. Thus, in order to affirm the Board's order we must find that substantial evidence supports the finding that LaGrand believed his death was substantially certain to follow his actions.

■ Again, there is no evidence that the insured had any knowledge the clip had been placed in the gun when he placed it to his head and fired a third time. Under these circumstances, LaGrand could not have believed his death was substantially certain to follow his action. LaGrand knew only that he had twice fired the gun at himself, as had others, without incident. *S.S.* makes clear the focus rests on whether the insured intended the *injury.* 858 S.W.2d at 376–77. Although it is undisputed that LaGrand intentionally waived the gun near his head and fired it, it cannot be concluded in light of the evidence that LaGrand intended to injure himself or that he believed his death was substantially certain to follow his foolish actions. Furthermore, evidence of a violent and external death raises the presumption that the insured did not intend to commit suicide because the law presumes that one's natural instinct is to avoid injury and preserve one's own life. *See Kentucky Cent. Life Ins. Co. v. Fannin,* 575 S.W.2d 76, 82 (Tex.Civ.App.—Amarillo 1978, no writ) (presumption compels jury to find that death was not suicide until or unless evidence to the contrary is introduced). LaGrand's mother and sister both testified that LaGrand was not suicidal but that he had recently discussed his plans for the future. His mother stated that LaGrand was planning soon to return to college. This was the reason for the road trip: LaGrand and his friends were looking into Alcorn State, a university with a potential scholarship for LaGrand. Butler and her brother spoke on the phone the day before he died. LaGrand did not seem depressed or upset; to the contrary, he seemed excited about the road trip and his future prospects. Such circumstantial evidence supports the presumption that the insured did not commit suicide or intentionally inflict the injuries that led to his death. We hold the Board's finding that LaGrand died as a result of intentionally self-inflicted injuries is not supported by substantial evidence.

It is unreasonable to conclude that LaGrand's death was not an accident and was intentionally self-inflicted under the evidence in light of prevailing Texas law. Because the Board's order denying Butler accidental death and term life benefits on both grounds is not supported by substantial evidence, we sustain points of error five through twelve.[3]

---

3. Because we find the Board's order was not supported by substantial evidence, we need not

reach points of error fifteen through twenty-four in which Butler claims the order was in violation

*Statutory Interest and Attorney's Fees*

In points of error thirteen and fourteen, Butler claims the trial court erred in affirming the Board's order which denied her claim for statutory interest and attorney's fees under article 21.55 of the Texas Insurance Code. Article 21.55 requires an insurer to pay to the policyholder or beneficiary, in addition to the principal amount owed under the insurance policy, eighteen percent per annum and reasonable attorney's fees in the event the insurer, liable on the policy, does not comply with the time requirements of article 21.55. Tex. Ins.Code Ann. art. 21.55 (West Supp.1998). It is undisputed that the Board did not comply with the requirements of article 21.55. The only issue before us is whether article 21.55 applies to this case in which LaGrand was insured under a policy administered by the Employees Retirement System of Texas. We conclude that it does not.

The Texas Employees Uniform Group Insurance Benefits Act established a plan for the purchase of group life, accident, and health insurance for state employees. Tex. Ins. Code Ann. art. 3.50–2 (West 1981 & Supp.1997). The administration and implementation of the Act is vested solely with the Board, and the executive director of ERS has the exclusive authority to decide "all questions relating to enrollment in or payment of claims arising from programs or coverages provided under authority of this Act." *Id.* art. 350–2, § 4B(a). Thus, LaGrand's insurance coverage under ERS was created by the Legislature. *See Employees Retirement Sys. v. Blount*, 709 S.W.2d 646, 647 (Tex. 1986); *see also Montgomery v. Blue Cross & Blue Shield*, 923 S.W.2d 147, 151 (Tex.App.—Austin 1996, writ denied). As such, Butler's

cause of action is derived from statute and the "statutory provisions are mandatory and exclusive and must be complied with in all respects." *Blount*, 709 S.W.2d at 647. Article 3.50–2 does not authorize the Board to grant statutory interest or attorney's fees to the policyholder or beneficiary in the event of noncompliance with statutory requirements. Tex. Ins.Code Ann. art. 3.50–2. Because the statute provides Butler an exclusive remedy, she is not entitled to recover interest or attorney's fees under a different statutory provision.

We have decided this very issue in *Beyer v. Employees Retirement System*, 808 S.W.2d 622 (Tex.App.—Austin 1991, writ denied). In *Beyer*, the Board awarded the beneficiary her insurance claim but rejected her request for statutory interest and attorney's fees. On appeal, this Court held that article 3.50–2 did not grant the beneficiary the legal right to recover such additional sums and that section 3.62 of the Insurance Code, the predecessor to article 21.55, could not be construed to apply to an ERS insurance proceeding. *Id.* at 626–27 (citing Tex. Ins.Code Ann. art. 3.62 (1981)).[4] Butler claims that *Beyer* is inapposite to the instant case because the Legislature has since amended section 3.62, removing any references to "court" and replacing it with "trier of fact" in article 21.55(6).[5] Thus, Butler argues, the Legislature intended article 21.55 to apply more broadly than the former article 3.62. *See Beyer*, 808 S.W.2d at 627 (literal language of article 3.62 limits its application to "court" proceedings). Although we pay heed to the canons of statutory construction, we find they in no way undermine the meaning of *Beyer*. In that case, we first inquired into the nature of the statute which governs

---

of statute, in excess of statutory authority, affected by an error of law, arbitrary and capricious, and characterized by an abuse of discretion. Nor need we reach points of error one through four in which Butler claims the Board applied the incorrect standard of law.

**4.** Acts of June 28, 1951, 52d Leg., R.S., ch. 491, art. 3.62, 1951 Tex. Gen. Laws 868, 920 (repealed 1991).

**5.** Section 6 of article 21.55, effective in 1991, has since been amended in 1995. Prior to 1995,

section 6 read "together with reasonable attorney's fees as determined by the trier of fact." The Legislature removed any reference to "trier of fact" and the current section now reads:

In all cases where a claim is made pursuant to a policy of insurance and the insurer liable therefor is not in compliance with the requirements of this article, such insurer shall be liable to pay … 18 percent per annum of the amount of such claim as damages, together with reasonable attorney's fees.

Tex. Ins.Code. Ann. art. 21.55(6) (West Supp. 1998).

**302**

insurance administered by ERS and held that the beneficiary could not recover statutory interest and attorney's fees because these additional remedies were not authorized by the governing statute. *Id.* at 626 (citing Tex. Ins.Code Ann. art. 3.50–2 (West 1981 & Supp.1997)). "Nothing in the Act explicitly gives the right to recover such additional sums in proceedings before the Board." *Id.* We then looked at article 3.62 and determined that it did not apply to an administrative hearing because an agency adjudication is not a "lawsuit" but an "executive measure taken in the administration of statutory provisions." *Id.* at 627. Our determination was based on the literal language of article 3.62 *and* a reasonable construction of the provision in question. *Id.* In the instant case, we do not interpret the statute as amended to apply to a contested case hearing for the same policy reasons we found article 3.62 to be inapplicable to such a proceeding. Article 21.55 applies to "ordinary lawsuits" brought in district court, not to an administrative proceeding and not to judicial review of an agency order.

We overrule points of error thirteen and fourteen.

## CONCLUSION

Because we determine the Board's order denying Butler recovery for accidental death and term life benefits was not supported by substantial evidence, we reverse the trial court's judgment and render judgment that Butler recover the benefits under the accidental death and term life insurance policies. Because we determine the amendment to the Insurance Code does not change the result in *Beyer,* we affirm the trial court's judgment denying statutory interest and attorney's fees.