Kittie H. PERKINS, Lowell L. Perkins, Steven G. Perkins, Randall L. Perkins, and Kristi L. Perkins Jernigan, Appellants,

v.

GROUP LIFE & HEALTH INSURANCE COMPANY, Appellee.

No. 03–00–00771–CV.

Court of Appeals of Texas, Austin.

May 31, 2001.

Rehearing Overruled Aug. 9, 2001.

Jennifer S. Stoddard, Blume & Stoddard, Dallas, for appellants.

Michael S. Hull, Hull, Hendricks & McRae, L.L.P., Austin, for appellee.

Before Justices KIDD, B.A. SMITH and PURYEAR.

BEA ANN SMITH, Justice.

Appellee Group Life & Health Insurance Company (Group Life) filed an action in district court seeking a declaratory judgment that Group Life owes no prejudgment interest on an insurance claim paid to appellants, Kittie H. Perkins, Lowell L. Perkins, Steven G. Perkins, Randall L. Perkins, and Kristi L. Perkins Jernigan (the Perkins family), following the accidental death of a state employee, Glen E. Perkins. Group Life initially refused to pay the supplemental death benefit because it maintained that Perkins's death was not accidental. This refusal to pay was upheld by the Employees Retirement System of Texas (ERS), which governs the disposition of claims filed through its benefits program. After seven years of administrative litigation, ERS finally determined that Perkins's death was accidental, and Group Life paid the death benefit in the amount of $141,000. Group Life filed for declaratory judgment in response to the Perkins family's demand for prejudgment interest on the benefit. Both sides filed motions for summary judgment. The district court granted Group Life's summary-judgment motion and denied the Perkins family's motion. The Perkins family appeals. Because the relevant statute does not entitle appellants to prejudgment interest and grants ERS the exclusive authority to decide "all questions relating to enrollment in or payment of claims arising from programs or coverages provided under" Perkins's insurance policy, we hold that the Perkins family may not recover prejudgment interest on the benefit. Con-

sequently, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Perkins, a Department of Public Safety trooper, attended a troopers' convention in Eufala, Oklahoma and fractured his ankle as he stepped out of a vehicle on April 30, 1990. Doctors in Oklahoma x-rayed and splinted the ankle and told Perkins to have his ankle treated when he returned to his home in Irving, Texas.

Upon his return, Perkins consulted Dr. James Frost, an orthopedic surgeon, who advised Perkins to have the ankle repaired through surgery. During the course of surgery, an anesthesiologist administered general anesthesia to Perkins. Perkins lost blood pressure, went into cardiac arrest, and died as a direct result of the cardiac arrest.

As a state employee, Perkins participated in the group benefits program offered through ERS. The policy was administered by Group Life under the authority of ERS. Under article 3.50–2 of the Texas Insurance Code, ERS has the authority to contract with "a qualified, experienced firm of group insurance specialists who shall act for the trustee [State Board of Trustees that administers ERS] in a capacity as independent administrators and managers of the programs authorized under this Act." Act of April 17, 1975, 64th Leg., R.S., ch. 79, § 4, 1975 Tex. Gen. Laws 208, 211 (Tex. Ins.Code Ann. art. 3.50–2, § 4, since amended). Group Life administered Perkins's insurance policy in accordance with article 3.50–2. *See id.*

The Perkins family made a claim on Perkins's life insurance policy, which included an accidental death and dismemberment benefits supplement. Group Life

denied accidental death benefits to the Perkins family in August 1990, maintaining that Perkins's death was the result of multiple events and conditions, including massive lymphadenopathy and sarcoidosis,[1] which are latent health conditions that precluded a finding of accidental death under Group Life's definition of the term.

In September 1990, the Perkins family asked for the denial to be reconsidered, and Group Life reaffirmed the denial after re-examination of the facts. The Perkins family appealed the denial to the Executive Director of ERS a year later, and in December 1991, ERS told the Perkins family that it had determined that Group Life was "contractually correct" in denying the benefits. The Perkins family appealed this decision to the Board of Trustees of ERS; a hearing was conducted in March 1993 before an administrative law judge (ALJ). In January 1994, the ALJ issued a proposal for decision that determined that Perkins's death was proximately caused by the administration of anesthesia in ignorance of the underlying sarcoidosis, and not the sarcoidosis itself. This distinction led the ALJ to conclude that Perkins's death was accidental under the terms of the insurance policy. Seven years after Perkins's death, ERS approved the claim for accidental death benefits, and Group Life paid the Perkins family $141,000 on the policy. It denied the family's demand for interest on $141,000 over the seven-year period between the trooper's death and the date of payment, some $76,681.77.

## DISCUSSION

 The Perkins family claims the trial court erred in granting Group Life's motion for summary judgment and denying summary judgment in its favor. The propriety of summary judgment in this case is a question of law; therefore, we review the trial court's decision *de novo*. *McCarthy Bros. Co. v. Cont'l Lloyds Ins. Co.*, 7 S.W.3d 725, 728 (Tex.App.—Austin 1999, no pet.). When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary-judgment proof presented by both sides and determine all questions presented. *Comm'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex.1997). If we find error, we must render the judgment the trial court should have entered. *Id.*

The Perkins family asks that we find that the family is entitled to prejudgment interest on the $141,000 death benefit under section 302.002 of the Texas Finance Code. *See* Act of May 22, 1997, 75th Leg., R.S., ch. 1008, § 1, 1997 Tex. Gen. Laws 3091, 3422 (Tex. Fin.Code Ann. § 302.002, since amended). The governing provision indicates that "[w]hen no specified rate of interest is agreed on by the parties, interest at the rate of six percent per year is allowed on all accounts and contracts ascertaining the amount payable, beginning on the 30th day after the date on which the amount is due and payable." *Id.*[2] The Perkins family posits that contract law applies in this case, and therefore that section 302.002 governs the policy. The only issue before us is whether section 302.002 applies to a policy of insurance administered by ERS. Following our decisions in *Beyer v. Employees Ret. Sys.*, 808 S.W.2d 622 (Tex.App.—Austin 1991, writ denied),

1. Sarcoidosis is defined in the administrative law judge's proposal for decision as a disorder of the immune system of unknown cause, which leads to mediastinal lymphadenopathy, a swelling of the lymph glands in the middle of the chest adjacent to the heart, in between the lungs, and between the breastbone and the spine.

2. The recent amendment to section 302.002 does not change our result. *See* Tex. Fin. Code Ann. § 302.002 (West Supp. 2001).

and *Butler v. Group Life & Health Ins. Co.*, 962 S.W.2d 296 (Tex.App.—Austin 1998, no pet.), we hold that it does not.

■ The Texas Employees Uniform Group Insurance Benefits Act established a plan for the purchase of group life, accident, and health insurance for state employees. Tex. Ins.Code Ann. art. 3.50–2 (West 1981 & Supp.2001). The administration and implementation of the Act is vested solely with ERS, and its executive director has the exclusive authority to decide "all questions relating to enrollment in or payment of claims arising from programs or coverages provided under authority of this Act." *Id.* art. 3.50–2, § 4B(a) (West Supp.2001). Thus, Perkins's insurance coverage was created by the legislature. *See Employees Ret. Sys. v. Blount*, 709 S.W.2d 646, 647 (Tex.1986); *see also Montgomery v. Blue Cross & Blue Shield of Tex., Inc.*, 923 S.W.2d 147, 151 (Tex. App.—Austin 1996, writ denied). As such, the Perkins family's cause of action derives from statute, not common law, and the "statutory provisions are mandatory and exclusive and must be complied with in all respects." *See Blount*, 709 S.W.2d at 647.

In *Beyer*, ERS awarded the beneficiary her insurance claim but rejected her request for statutory interest under section 3.62 of the Insurance Code and for attorney's fees. On appeal, this Court held that article 3.50–2 did not grant the beneficiary the legal right to recover such additional sums and that section 3.62 of the Insurance Code could not be construed to apply to an ERS insurance proceeding if the ERS itself did not choose to apply it. *Beyer*, 808 S.W.2d at 627.

In *Butler*, the beneficiary of a policy administered by ERS relied on a slight amendment to the language of section 3.62, now embodied in section 21.55 of the insurance code, to seek a different result. We found no distinction and, applying *Beyer*,

reached the same result. *Butler*, 962 S.W.2d at 301–02. Article 3.50–2 provides the exclusive remedy for a claim on a policy administered by ERS, *id.;* because article 3.50–2 does not explicitly grant a right to prejudgment interest, there is no such right under a different statutory scheme unless the ERS chooses to apply that other provision.

■ The Perkins family seeks interest under section 302.002 of the Finance Code rather than article 21.55 of the Insurance Code, but the result is the same. Article 3.50–2 creates an insurance scheme, grants to ERS the right to determine "all questions relating to enrollment in or payment of claims," and does not grant to policyholders or beneficiaries a legal right to prejudgment interest. Tex. Ins.Code Ann. art. 3.50–2, § 4B(a). The ERS thus has the *discretion* to pay or not pay interest offered under other statutory schemes governing other insurance policies. *See id.* The Perkins family asserts that *Beyer* and *Butler* are distinguishable because they arose from administrative decisions of the ERS that were judicially reviewed by the courts, whereas this decision was initially imposed by the district court in a declaratory judgment proceeding. Article 3.50–2 governs in either instance and our decisions in *Beyer* and *Butler* compel our decision that Article 3.50–2 is the exclusive remedy for policyholders or beneficiaries bringing claims on an insurance policy administered by the ERS.

## CONCLUSION

Because we determine that section 302.002 of the Finance Code does not apply to an insurance policy administered by ERS, we affirm the trial court's summary judgment in favor of Group Life.