Greg TANNER and Maribel Tanner, Individually and as Next Friends of K.T. and R.T., Minor Children, Appellants,

v.

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Appellee.

No. 11–05–00371–CV.

Court of Appeals of Texas, Eastland.

Aug. 9, 2007.

Don R. Cotton, The Bob Richardson Law Firm, Austin, for appellants.

L. Chris Heinemeyer, Krenek & Heinemeyer, P.C., San Antonio, for appellee.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

This is a declaratory judgment action. Nationwide Mutual Fire Insurance Company filed suit seeking a determination of its obligation to defend or indemnify its insured, Richard Irwin Gibbons, for personal injury claims asserted by Greg and Maribel Tanner, Individually and as Next Friends of their minor children, K.T. and R.T., resulting from an accident that occurred while Gibbons was fleeing the police. The jury found that Gibbons did not intentionally cause any property damage or bodily injury, but the trial court disregarded that finding and entered judgment n.o.v. in Nationwide's favor. We affirm.

### I. *Background Facts*

Gibbons was stopped by a Texas State Trooper on Interstate 35 south of San Marcos. Gibbons fled, and the trooper pursued him. In the subsequent chase, Gibbons drove into San Marcos, and several San Marcos police officers responded. Gibbons exited the interstate at Highway 80 and drove through the city. At one point he was in a residential neighborhood where the speed limit was thirty miles per hour. Gibbons was traveling at speeds in excess of eighty miles per hour and was making turns at forty-five to fifty-five miles per hour. He committed numerous traffic violations, including speeding, failing to stop at stop signs, and failure to yield the right-of-way.

Gibbons returned to Highway 80 and left San Marcos heading east. He reached speeds in excess of 100 miles per hour and swerved into oncoming traffic to maneuver around slower moving vehicles. Gibbons exited Highway 80, drove through a freshly plowed cornfield, doubled back, and headed west toward San Marcos on a road running parallel to Highway 80. San Marcos Police Sergeant Penny Dunn attempted to block the roadway to stop Gibbons's vehicle. He drove off of the roadway and went around her.

Gibbons returned to the roadway and approached an intersection with Old Bastrop Road. The Tanners were in a small sedan on Old Bastrop Road nearing the intersection and had the right-of-way. The two vehicles arrived at the intersection at the same time. Gibbons locked his brakes and struck the Tanners' vehicle. He then left the intersection, doubled back, and headed east. Sergeant Dunn stayed to help the Tanners while Officer Daniel Arredondo continued the pursuit. Gibbons made a couple of turns and then veered into a plowed field. Officer Arredondo determined that it was too danger-

ous to allow Gibbons to continue any further, and he shot out the front and rear right tires on Gibbons's pickup. Gibbons was arrested and was charged with aggravated assault with a motor vehicle.

All four of the Tanners were injured. Their seven-year-old son was the most severely injured. The impact caved in the door where he was sitting. He was comatose for a week, in the hospital for over a month, and attended physical therapy for five years.

The Tanners filed suit against Gibbons. Nationwide was Gibbons's liability carrier, and it filed a declaratory judgment action against Gibbons and named the Tanners as interested parties. Nationwide contended that Gibbons had no coverage for the Tanners' claims because of the intentional-acts exclusion in his insurance policy. The jury returned a verdict favoring the Tanners, finding that Gibbons did not intentionally cause their damages. Nationwide filed a motion to disregard the jury finding. The trial court granted that motion and entered a declaratory judgment that Nationwide owed Gibbons no duty to defend or indemnify.

## II. *Issues*

The Tanners challenge the trial court's judgment with one issue contending that the trial court erred by granting Nationwide's motion to disregard and entering judgment notwithstanding the jury's verdict.

## III. *Analysis*

### A. *Standard of Review.*

A judgment n.o.v. is reviewed under the "no evidence" standard of review. *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990). A trial court may enter judgment n.o.v. if (1) there is a complete absence of a vital fact, (2) the court is barred by the rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a fact is no more than a scintilla of evidence, or (4) the evidence establishes conclusively the opposite of a vital fact. *See City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex.2005). The test to see if one of these situations has been met is to determine whether the evidence at trial would enable a reasonable jury to reach the verdict under review. *Id.* at 828. In so doing, we must credit all favorable evidence that a reasonable jury could favor and disregard all contrary evidence unless a reasonable jury could not. *Id.* If a reasonable jury could not have reached the verdict, then the judgment n.o.v. was proper. However, if it could have, then the judgment n.o.v. was improper and must be reversed. *Id.*

■ Nationwide had the burden of proof. Because Nationwide complained of the jury's failure to find that Gibbons acted intentionally, it was required to show that the evidence conclusively established that Gibbons intentionally caused the Tanners' injuries and that no reasonable juror could have concluded otherwise. *See Gallas v. Car Biz, Inc.*, 914 S.W.2d 592, 593 (Tex.App.-Dallas 1995, writ denied) (judgment n.o.v. proper when the evidence establishes an issue as a matter of law and the jury is not free to make a contrary finding).

### B. *The Policy.*

Gibbons's liability policy contained the following intentional-acts exclusion:

> **Property damage** or **bodily injury** caused intentionally by or at the direction of an **insured,** including willful acts the result of which the **insured** knows or ought to know will follow from the **insured's** conduct.

Gibbons's liability policy is an Ohio insurance policy, but neither party contends that Ohio law is controlling. However, because there are no Texas cases construing this precise language, both sides have discussed relevant Ohio caselaw.

In *Nationwide Mutual Insurance Co. v. Finkley*, 112 Ohio App.3d 712, 679 N.E.2d 1189 (1996), the court considered whether this exclusion applies when an insured strikes another vehicle while fleeing from the police. An unlicensed teenager stole his grandmother's van. When the police attempted to pull the vehicle over, the teenager led police on a high-speed chase through an urban area that ended with his colliding with another vehicle. *Id.* at 1190. Ohio utilizes an inferred intent rule that is similar to Texas law and considers injuries that are substantially certain to follow from an insured's acts to be intentional. *Gearing v. Nationwide Ins. Co.*, 76 Ohio St.3d 34, 665 N.E.2d 1115 (1996). The Ohio court concluded that "where an insured willfully and purposefully attempts to elude police in an automobile chase through an urban area in reckless disregard of traffic control devices, his actions are substantially certain to result in injury." *Finkley*, 679 N.E.2d at 1191.

The parties understandably take opposite positions on the impact of this decision. Nationwide argues that it is directly on point and supports the trial court's judgment. The Tanners distinguish *Finkley* because the teenager had no formal or informal driver's training and the accident occurred in an urban area. They note the absence of any evidence that Gibbons was unlicensed or untrained and point out that the collision occurred in a rural area and that Gibbons attempted to avoid striking them.

### C. Texas Caselaw.

■ While Texas courts have not construed this specific policy language, they have considered similar intentional-acts exclusions. Texas follows the inferred intent rule, which considers a result (including injury to another) to be intentional whenever it is the natural and probable consequence of an intentional act. *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 378 (Tex.1993). In other words, regardless of the insured's subjective intent, intent is inferred when it is substantially certain that a particular result will follow an intentional act. *Id. Compare Butler v. Group Life and Health Ins. Co.*, 962 S.W.2d 296 (Tex.App.-Austin 1998, no pet.) (insured did not intentionally injure himself when he held what he thought was an unloaded gun to his head and pulled the trigger), *with Misle v. State Farm Mut. Auto. Ins. Co.*, 908 S.W.2d 289 (Tex.App.-Austin 1995, no writ) (insured intentionally injured another as a matter of law when he shot a BB gun toward a crowd, even though he testified that he did not intend to hurt anyone).

In *S.S.*, the insured had genital herpes and infected another during consensual intercourse. 858 S.W.2d at 375. The court noted that a substantial certainty requires a higher awareness of the risk of harm than do the lesser culpable mental states of recklessness and negligence. *Id.* at 378. The court held that, even though the insured intentionally engaged in intercourse, the intentional-acts exclusion did not defeat his coverage because there was evidence that people widely believed that herpes was not contagious absent an active outbreak and, thus, the insured was not substantially certain that his conduct would result in harm to his partner. *Id.* at 379.

### D. The Evidence.

■ The Tanners correctly note that we must review the record in the light most favorable to the jury finding and

argue that we may consider only the evidence and any inferences that tend to support the jury's finding. In *Keller,* however, the supreme court indicated that in some instances a no-evidence review requires a broader evidentiary inquiry. 168 S.W.3d 802. For example, in defamation and intentional infliction of emotional distress cases, contextual evidence must be considered. *Id.* at 811. When reviewing a state of mind determination, reviewing courts may not disregard evidence of what the party was conscious. *Id.* at 817. Because Gibbons's coverage turned on his intent, our review must necessarily take into account contextual evidence and undisputed evidence relevant to his knowledge, while remaining mindful that we are not to substitute our opinion for that of the jury or invade the jury's province to make credibility determinations.

█ The Tanners concede that Gibbons was intentionally or willfully fleeing from the police and that he was driving inappropriately but argue that, when the evidence is reviewed in the light most favorable to the jury's finding, its verdict must be reinstated. They point to the following testimony from Officer Arredondo to show that Gibbons did not intentionally hit their vehicle but took steps to avoid causing them any injury:

Q: What did you observe?

A: As we got closer to the intersection, I observed the truck apply the brakes, lock up the brakes, and strike the Tanner vehicle.

. . . .

Q: Did I understand you to say that prior to the collision you saw the truck that Gibbons was driving, saw its brake lights come on?

A: Yes.

Q: And so as it approached the intersection where the Tanner vehicle was also approaching, you saw the truck brake lights come on?

A: Yes.

Q: And that's before the impact?

A: Yes.

. . . .

Q: It looked to you like he tried to stop, though, didn't it?

A: Well, yes, he did apply his brakes. And the truck did skid before striking the vehicle.

Gibbons's actions in the instant before the collision are clearly relevant to intent, but they cannot be viewed in a vacuum. In *S.S.,* the supreme court quoted the following statement from Professor Prosser:

[I]ntent is broader than a desire or purpose to bring about physical results. It extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what the actor does. . . . On the other hand, the mere knowledge and appreciation of a risk—something short of substantial certainly—is not intent. The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong. In such cases the distinction between intent and negligence obviously is a matter of degree. The line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable person would avoid, and becomes in the mind of the actor a substantial certainty.

858 S.W.2d at 378 (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 8, at 35–36 (5th ed.1984)).

In this instance, the jury had undisputed evidence that Gibbons was willfully and

intentionally attempting to evade the police, that he had been involved in a protracted chase, that he had driven 80 miles per hour in a residential neighborhood and was driving 100 miles per hour outside city limits, that he was disregarding traffic control devices, and that he had driven on the wrong side of the road in the face of oncoming traffic and left the road entirely to evade the police. Each of these actions carried with it an undisputed and substantial risk that someone would be injured. That risk became less hypothetical and more real the longer the chase continued. We agree with the analysis in *Finkley,* 679 N.E.2d at 1191, that, as a matter of law, this type of conduct falls within the policy's intentional-acts exclusion. Gibbons's desire to avoid the police did not necessarily include a subjective intent to cause injury; however, by his conduct, an accident was substantially likely to occur. It was simply a question of when, where, and who might be unfortunately involved.

We recognize that there are factual distinctions between *Finkley* and our case, but these are not determinative. For example, in *Finkley* the chase and collision occurred in a residential neighborhood while Gibbons struck the Tanners in a rural setting. Location is relevant, but the exclusion turns on intent and not location. A high-speed police chase through a residential neighborhood involves a different quality of risk than one in a rural setting, but Gibbons's conduct—and thus intent—was consistent throughout the chase. Moreover, it was merely fortuitous that the accident happened outside city limits. Gibbons drove through at least one residential neighborhood at a high rate of speed and was alternatively driving to and from San Marcos throughout the chase.

Finally, Gibbons's intent is undisturbed by evidence that immediately before the accident he locked up his brakes. This action can be characterized in numerous ways. Because we must review the evidence in a light most favorable to the verdict, we assume that Gibbons did so solely to avoid striking the Tanners' vehicle and causing them any injury. However, Gibbons's attempt was unsuccessful precisely because of the increased risk of harm he created by driving 100 miles an hour and ignoring traffic signs. Because the evidence is undisputed that he intentionally created this heightened risk, the intentional-acts exclusion is still applicable.

The trial court correctly disregarded the jury's finding and entered judgment n.o.v. in Nationwide's favor because, as a matter of law, the intentional-acts exclusion in Gibbons's liability policy excluded any coverage for the Tanners' claims.

### IV. *Holding*

The Tanners' issue is overruled, and the judgment of the trial court is affirmed.