Opinion filed August 9, 2007












 
 
  
 
 







 
 
  
 
 




Opinion filed August 9,
2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00371-CV 

                                                    __________

 

      GREG TANNER AND MARIBEL TANNER, INDIVIDUALLY AND AS

        NEXT FRIENDS OF
K.T. AND R.T., MINOR CHILDREN, Appellants

 

                                                             V.

 

         NATIONWIDE MUTUAL
FIRE INSURANCE COMPANY, Appellee

 



 

                                          On
Appeal from the 22nd District Court

 

                                                        Caldwell County, Texas

 

                                                 Trial
Court Cause No. 04-0-017

 



 

                                                                   O
P I N I O N

 








This
is a declaratory judgment action.  Nationwide Mutual Fire Insurance Company
filed suit seeking a determination of its obligation to defend or indemnify its
insured, Richard Irwin Gibbons, for personal injury claims asserted by Greg and
Maribel Tanner, Individually and as Next Friends of their minor children, K.T.
and R.T., resulting from an accident that occurred while Gibbons was fleeing
the police.  The jury found that Gibbons did not intentionally cause any
property damage or bodily injury, but the trial court disregarded that finding
and entered judgment n.o.v. in Nationwide=s
favor.  We affirm.

                                                             I. 
Background Facts

Gibbons
was stopped by a Texas State Trooper on Interstate 35 south of San Marcos. Gibbons fled, and the trooper pursued him.  In the subsequent chase, Gibbons
drove into San Marcos, and several San Marcos police officers responded. 
Gibbons exited the interstate at Highway 80 and drove through the city.  At one
point he was in a residential neighborhood where the speed limit was thirty
miles per hour.  Gibbons was traveling at speeds in excess of eighty miles per
hour and was making turns at forty-five to fifty-five miles per hour.  He committed
numerous traffic violations, including speeding, failing to stop at stop signs,
and failure to yield the right-of-way.

Gibbons
returned to Highway 80 and left San Marcos heading east.  He reached speeds in
excess of 100 miles per hour and swerved into oncoming traffic to maneuver
around slower moving vehicles.  Gibbons exited Highway 80, drove through a
freshly plowed cornfield, doubled back, and headed west toward San Marcos on a road running parallel to Highway 80.  San Marcos Police Sergeant Penny Dunn
attempted to block the roadway to stop Gibbons=s
vehicle.  He drove off of the roadway and went around her.

Gibbons
returned to the roadway and approached an intersection with Old Bastrop Road. 
The Tanners were in a small sedan on Old Bastrop Road nearing the intersection
and had the right-of-way.  The two vehicles arrived at the intersection at the
same time.  Gibbons locked his brakes and struck the Tanners= vehicle.  He then left the
intersection, doubled back, and headed east. Sergeant Dunn stayed to help the
Tanners while Officer Daniel Arredondo continued the pursuit. Gibbons made a
couple of turns and then veered into a plowed field.  Officer Arredondo
determined that it was too dangerous to allow Gibbons to continue any further,
and he shot out the front and rear right tires on Gibbons=s pickup.  Gibbons was
arrested and was charged with aggravated assault with a motor vehicle.

All
four of the Tanners were injured.  Their seven-year-old son was the most
severely injured.  The impact caved in the door where he was sitting.  He was comatose
for a week, in the hospital for over a month, and attended physical therapy for
five years.








The
Tanners filed suit against Gibbons.  Nationwide was Gibbons=s liability carrier, and it
filed a declaratory judgment action against Gibbons and named the Tanners as
interested parties. Nationwide contended that Gibbons had no coverage for the
Tanners= claims
because of the intentional-acts exclusion in his insurance policy.  The jury
returned a verdict favoring the Tanners, finding that Gibbons did not
intentionally cause their damages.  Nationwide filed a motion to disregard the
jury finding.  The trial court granted that motion and entered a declaratory
judgment that Nationwide owed Gibbons no duty to defend or indemnify.

                                                                       II. 
Issues

The
Tanners challenge the trial court=s
judgment with one issue contending that the trial court erred by granting
Nationwide=s motion to
disregard and entering judgment notwithstanding the jury=s verdict.

                                                                     III.
Analysis

A. 
Standard of Review.

A
judgment n.o.v. is reviewed under the Ano
evidence@ standard of
review.  Best v. Ryan Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990).  A trial court may enter judgment n.o.v. if (1) there is a complete absence of
a vital fact, (2) the court is barred by the rules of law or evidence from
giving weight to the only evidence offered to prove a vital fact, (3) the
evidence offered to prove a fact is no more than a scintilla of evidence, or
(4) the evidence establishes conclusively the opposite of a vital fact.  See City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005).  The test to see
if one of these situations has been met is to determine whether the evidence at
trial would enable a reasonable jury to reach the verdict under review.  Id. at 828.  In so doing, we must credit all favorable evidence that a reasonable
jury could favor and disregard all contrary evidence unless a reasonable jury
could not.  Id.  If a reasonable jury could not have reached the
verdict, then the judgment n.o.v. was proper.  However, if it could have, then
the judgment n.o.v. was improper and must be reversed.  Id.








Nationwide
had the burden of proof.  Because Nationwide complained of the jury=s failure to find that
Gibbons acted intentionally, it was required to show that the evidence
conclusively established that Gibbons intentionally caused the Tanners= injuries and that no
reasonable juror could have concluded otherwise.  See Gallas v. Car Biz, Inc.,
914 S.W.2d 592, 593 (Tex. App.CDallas
1995, writ denied) (judgment n.o.v. proper when the evidence establishes an
issue as a matter of law and the jury is not free to make a contrary finding).

B. 
The Policy.

Gibbons=s liability policy
contained the following intentional-acts exclusion:

Property damage
or bodily injury caused intentionally by or at the direction of an insured,
including willful acts the result of which the insured knows or ought to
know will follow from the insured=s
conduct.

 

Gibbons=s liability policy is an Ohio insurance policy, but neither party contends that Ohio law is controlling.  However,
because there are no Texas cases construing this precise language, both sides
have discussed relevant Ohio caselaw.  

In
Nationwide Mutual Insurance Co. v. Finkley, 679 N.E.2d 1189 (Ohio Ct.
App. 1996), the court considered whether this exclusion applies when an insured
strikes another vehicle while fleeing from the police.  An unlicensed teenager
stole his grandmother=s
van.  When the police attempted to pull the vehicle over, the teenager led
police on a high-speed chase through an urban area that ended with his
colliding with another vehicle.  Id. at 1190.  Ohio utilizes an inferred
intent rule that is similar to Texas law and considers injuries that are
substantially certain to follow from an insured=s
acts to be intentional.  Gearing v. Nationwide Ins. Co., 665 N.E.2d 1115
(Ohio 1996).  The Ohio court concluded that Awhere
an insured willfully and purposefully attempts to elude police in an automobile
chase through an urban area in reckless disregard of traffic control devices,
his actions are substantially certain to result in injury.@  Finkley, 679
N.E.2d at 1191.

The
parties understandably take opposite positions on the impact of this decision. 
Nationwide argues that it is directly on point and supports the trial court=s judgment.  The Tanners
distinguish Finkley because the teenager had no formal or informal
driver=s training and
the accident occurred in an urban area.  They note the absence of any evidence
that Gibbons was unlicensed or untrained and point out that the collision
occurred in a rural area and that Gibbons attempted to avoid striking them.

C. 
Texas Caselaw.








While
 Texas courts have not construed this specific policy language, they have considered
similar intentional-acts exclusions.  Texas follows the inferred intent rule,
which considers a result (including injury to another) to be intentional
whenever it is the natural and probable consequence of an intentional act.  State
Farm Fire & Casualty Co. v. S.S., 858 S.W.2d 374, 378 (Tex. 1993).  In other words, regardless of the insured=s
subjective intent, intent is inferred when it is substantially certain that a
particular result will follow an intentional act.  Id.  Compare Butler v. Group Life and Health Ins. Co., 962 S.W.2d 296 (Tex. App.CAustin 1998, no pet.)
(insured did not intentionally injure himself when he held what he thought was
an unloaded gun to his head and pulled the trigger), with Misle v.
State Farm Mut. Auto. Ins. Co., 908 S.W.2d 289 (Tex. App.CAustin 1995, no writ)
(insured intentionally injured another as a matter of law when he shot a BB gun
toward a crowd, even though he testified that he did not intend to hurt
anyone).

In
S.S., the insured had genital herpes and infected another during
consensual intercourse.  858 S.W.2d at 375.  The court noted that a substantial
certainty requires a higher awareness of the risk of harm than do the lesser
culpable mental states of recklessness and negligence.  Id. at 378. The
court held that, even though the insured intentionally engaged in intercourse,
the intentional-acts exclusion did not defeat his coverage because there was
evidence that people widely believed that herpes was not contagious absent an
active outbreak and, thus, the insured was not substantially certain that his
conduct would result in harm to his partner. Id. at 379.

D. 
The Evidence.

The
Tanners correctly note that we must review the record in the light most
favorable to the jury finding and argue that we may consider only the evidence
and any inferences that tend to support the jury=s
finding.  In Keller, however, the supreme court indicated that in some
instances a no-evidence review requires a broader evidentiary inquiry.  168
S.W.3d 802.  For example, in defamation and intentional infliction of emotional
distress cases, contextual evidence must be considered.  Id. at 811.
When reviewing a state of mind determination, reviewing courts may not
disregard evidence of what the party was conscious.  Id. at 817. 
Because Gibbons=s
coverage turned on his intent, our review must necessarily take into account
contextual evidence and undisputed evidence relevant to his knowledge, while
remaining mindful that we are not to substitute our opinion for that of the
jury or invade the jury=s
province to make credibility determinations.








The
Tanners concede that Gibbons was intentionally or willfully fleeing from the
police and that he was driving inappropriately but argue that, when the
evidence is reviewed in the light most favorable to the jury=s finding, its verdict must
be reinstated.  They point to the following testimony from Officer Arredondo to
show that Gibbons did not intentionally hit their vehicle but took steps to
avoid causing them any injury:

Q:        What
did you observe?

 

A:         As
we got closer to the intersection, I observed the truck apply the brakes, lock
up the brakes, and strike the Tanner vehicle.

 

. . . .

 

Q:        Did
I understand you to say that prior to the collision you saw the truck that
Gibbons was driving, saw its brake lights come on?

 

A:         Yes.

 

Q:
       And so as it approached the intersection where the Tanner vehicle was
also approaching, you saw the truck brake lights come on?

 

A:         Yes.

 

Q:        And
that=s before the
impact?

 

A:         Yes.

 

. . . .

 

Q:        It
looked to you like he tried to stop, though, didn=t
it?

 

A:         Well,
yes, he did apply his brakes.  And the truck did skid before striking the
vehicle.

 

Gibbons=s actions in the instant
before the collision are clearly relevant to intent, but they cannot be viewed
in a vacuum.  In S.S., the supreme court quoted the following statement
from Professor Prosser:








[I]ntent is broader
than a desire or purpose to bring about physical results.  It extends not only
to those consequences which are desired, but also to those which the actor
believes are substantially certain to follow from what the actor does. . . . 
On the other hand, the mere knowledge and appreciation of a riskCsomething short of
substantial certainlyCis
not intent.  The defendant who acts in the belief or consciousness that the act
is causing an appreciable risk of harm to another may be negligent, and if the
risk is great the conduct may be characterized as reckless or wanton, but it is
not an intentional wrong.  In such cases the distinction between intent and
negligence obviously is a matter of degree.  The line has been drawn by the courts
at the point where the known danger ceases to be only a foreseeable risk which
a reasonable person would avoid, and becomes in the mind of the actor a
substantial certainty.

 

858 S.W.2d at
378 (quoting W. Page Keeton et al.,
Prosser and Keeton on the Law of Torts '
8, at 35-36 (5th ed. 1984)).

In
this instance, the jury had undisputed evidence that Gibbons was willfully and
intentionally attempting to evade the police, that he had been involved in a
protracted chase, that he had driven 80 miles per hour in a residential
neighborhood and was driving 100 miles per hour outside city limits, that he
was disregarding traffic control devices, and that he had driven on the wrong
side of the road in the face of on-coming traffic and left the road entirely to
evade the police.  Each of these actions carried with it an undisputed and
substantial risk that someone would be injured.  That risk became less
hypothetical and more real the longer the chase continued.  We agree with the
analysis in Finkley, 679 N.E.2d at 1191, that, as a matter of law, this
type of conduct falls within the policy=s
intentional-acts exclusion.  Gibbons=s
desire to avoid the police did not necessarily include a subjective intent to
cause injury; however, by his conduct, an accident was substantially likely to
occur.  It was simply a question of when, where, and who might be unfortunately
involved.  

We
recognize that there are factual distinctions between Finkley and our
case, but these are not determinative.  For example, in Finkley the
chase and collision occurred in a residential neighborhood while Gibbons struck
the Tanners in a rural setting.  Location is relevant, but the exclusion turns
on intent and not location.  A high-speed police chase through a residential
neighborhood involves a different quality of risk than one in a rural setting,
but Gibbons=s conduct B and thus intent B was consistent throughout
the chase.  Moreover, it was merely fortuitous that the accident happened
outside city limits.  Gibbons drove through at least one residential
neighborhood at a high rate of speed and was alternatively driving to and from San Marcos throughout the chase.








Finally,
Gibbons=s intent is
undisturbed by evidence that immediately before the accident he locked up his
brakes.  This action can be characterized in numerous ways.  Because we must
review the evidence in a light most favorable to the verdict, we assume that
Gibbons did so solely to avoid striking the Tanners= vehicle and causing them any injury. 
However, Gibbons=s
attempt was unsuccessful precisely because of the increased risk of harm he
created by driving 100 miles an hour and ignoring traffic signs.  Because the
evidence is undisputed that he intentionally created this heightened risk, the
intentional-acts exclusion is still applicable.

The
trial court correctly disregarded the jury=s
finding and entered judgment n.o.v. in Nationwide=s
favor because, as a matter of law, the intentional-acts exclusion in Gibbons=s liability policy excluded
any coverage for the Tanners=
claims.

                                                                     IV.
Holding

The
Tanners= issue is
overruled, and the judgment of the trial court is affirmed.

 

 

RICK STRANGE        

JUSTICE

 

August 9, 2007

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.